The Pennsylvania Company v. Marion.

Filed April 24, 1890.

———◆———

|     |     |
|-----|-----|
| 123 | 415 |
| 123 | 391 |

| 123 | 415 |
|-----|-----|
| 132 | 536 |

| 123 | 415 |
|-----|-----|
| 134 | 440 |
| 134 | 611 |
| 135 | 442 |

| 123 | 415 |
|-----|-----|
| 143 | 131 |

| 123 | 415 |
|-----|-----|
| 152 | 670 |

| 123 | 415 |
|-----|-----|
| 154 | 34  |
| 156 | 538 |

| 123 | 415 |
|-----|-----|
| 157 | 420 |

| 123 | 415 |
|-----|-----|
| f167 | 90 |

No. 14,109.

## THE PENNSYLVANIA COMPANY v. MARION.

RAILROAD.—*Station Platforms.*—*Duty to Keep in Repair.*—*Liability for Injuries.*—Railway companies are bound to keep the platforms at their passenger stations in a safe condition for persons to enter and leave the cars, and a failure to do so is a neglect of duty which makes the company liable to persons injured without fault on their part on account of such defective platform.

SAME.—*Injury to Passenger while Alighting from Train.*—*Contributory Negligence.*—*Question of Fact for Jury.*—Where a passenger, riding on the caboose of a freight train, carefully alights therefrom while the train is moving slowly, about two miles an hour, stepping from the caboose to the platform of the station, and is thrown under the train and injured, by reason of its defective condition, unknown to him, the question as to whether or not such passenger was guilty of contributory negligence is a fact to be determined by the jury.

SAME.—*Evidence.*—In an action to recover for such injury sustained, a question as to the effort made by the plaintiff to prevent himself from falling is not objectionable as calling for a conclusion or opinion.

SAME.—*How Accident Occurred.*—*Evidence as to.*—*Physician.*—*Competency of as Witness.*—In such action a physician who had assisted in dressing the plaintiff's injuries, and while so engaged, in conversation with the plaintiff had asked how the accident occurred, is incompetent to testify as to the information obtained.

SAME.—*Platform.*—*Implied Representation of Safety.*—*Instruction.*—An instruction to the jury to the effect that a railroad company, in constructing a platform for the use of passengers in getting on and off trains at a pub-

lic railway station, impliedly represents to the public that it is reasonably safe and sufficient for such purpose, and that it is their duty to make it so that it may be used safely in approaching and leaving trains in any way in which passengers might reasonably and with reasonable care be expected to approach and leave trains, is unobjectionable.

SAME.—*Defective Condition of Platform.—Passenger's Knowledge of.—Instruction.*—It was not error to instruct the jury to the effect that although the passenger may have previously known of the condition of the platform, and known its condition at the time he stepped upon it, he was not required to abandon the use of it and seek some other place of approaching and leaving the train, and that if he used care proportioned to the known danger, and was injured by reason of such defect, he would not be barred from recovery.

WITNESS.—*Cross-Examination of.—Refusal.—Harmless Error.*—There is no available error in a ruling sustaining an objection to cross-examining questions when afterwards a full cross-examination of the witness on the subject is permitted.

SAME.—*Testimony on Former Trial.—Bill of Exceptions Containing.—Inadmissibility of to Contradict Witness at Retrial.*—A bill of exceptions containing the testimony given by a witness at a former trial is inadmissible for the purpose of contradicting or impeaching the same witness at a retrial of the same cause.

From the Owen Circuit Court.

*S. O. Pickens,* for appellant.

*J. C. Robinson* and *I. H. Fowler,* for appellee.

OLDS, J.—This was an action brought by the appellee against the appellant to recover damages sustained by the appellee alleged to have resulted by reason of the negligence of the appellant.

On the 6th day of December, 1882, the appellee was a passenger in the caboose of one of appellant's freight trains from Gosport to Mundy's Station. When the train arrived at the latter station, the place of appellee's destination, and while the train was slowing up to make the stop, and running at a very low rate of speed, the appellee stepped off the car on to the platform, the train not coming to a stop until after the caboose passed the platform. In stepping on to the platform the appellee fell, with his right arm under the

The Pennsylvania Company *v.* Marion.

car, and it was so badly crushed by the car wheels passing over it that it had to be amputated.

The appellant is charged with negligence in constructing and maintaining the platform in an unsafe and dangerous condition, wholly unfit and unsafe for use of passengers.

The appellant demurred to the complaint for want of facts, which demurrer was overruled, and exceptions taken.

Issue was joined by answer in denial, and a trial had, resulting in a verdict and judgment in favor of the appellee for $3,000.

Appellant filed a motion for a new trial, which was overruled, and exceptions taken.

The rulings of the court on the demurrer to the complaint and motion for a new trial are assigned as error.

There was a former trial of the cause and an appeal to this court, and a reversal of the judgment. *Pennsylvania Co.* v. *Marion*, 104 Ind. 239.

It is conceded by counsel for appellant that the complaint is sufficient, and the alleged error in overruling the demurrer to the complaint is waived. The only error relied upon for the reversal of the judgment is the ruling of the court on the motion for a new trial. The principal ground urged against such ruling is that the verdict is not sustained by sufficient evidence. This contention of the appellant is mainly on account of the fact that the evidence shows that the appellee stepped from the train while it was in motion, and this, it is contended, is negligence *per se*, and therefore it must be declared as a matter of law that the appellee was guilty of contributory negligence, and hence can not recover.

It is important to consider what obligation rests upon the appellant in regard to the keeping of the platform at the station in repair, and this has been so fully considered in the recent decisions of this court that it is unnecessary to do

more than refer to the decisions and quote briefly from them.

In *Louisville, etc., R. W. Co.* v. *Lucas*, 119 Ind. 583, at p. 590, it is said : " The duty of a railway carrier does not end when it provides safe cars, engines and appliances, for its duty extends so far as to require it to provide means for passengers to safely enter its cars at its stations, and that duty also requires the carrier to make it safe for them to leave its cars and stations." It is further said : " It was the duty of the appellant to keep the platform which it used in conjunction with the Pennsylvania Company in a safe condition. The situation of the platform, and the manner of its construction, were such as to make it the duty of the appellant to see that it was safe, for it was bound to know that if it became unsafe the lives and limbs of its passengers were put in peril."

In the case of *Lucas* v. *Pennsylvania Co.*, 120 Ind. 205, the following language from Bishop Non-Contract Law, section 1086, is quoted and approved : " The depot and connected grounds, visited by coming and going passengers, should be fitted up with a careful regard to their comfort and safety. The approaches, the tracks around, the platforms and places for entering and leaving the cars, the passages to the cars; every spot likely to be visited by passengers seeking the depot, waiting at it for trains, or departing; should be made safe and kept so, and at reasonable times should be lighted. And passengers not in fault, injured through a neglect of this duty, may have compensation."

These decisions settle the law in this State in accordance with the holding of other courts, that railway companies are bound to keep the platforms at their passenger stations in a safe condition for persons to enter and leave the cars, and a failure to do so is a neglect of duty which makes the company liable to persons injured without fault on their part on account of such defective platform.

The evidence clearly shows the platform, where the appel-

lee stepped from the car, to be out of repair and unfit and unsafe for use by passengers in getting on and off trains, and this is not seriously controverted, except to contend that it might have been worse.

We next consider the question of contributory negligence by the appellee in stepping from the train while in motion.

There was evidence from which the jury may have found that at the time the appellee stepped from the train the train was moving at a speed of not over two miles an hour, or at the speed of an ordinary or slow walk of a person, and that it came to a stop about two car lengths beyond the platform; that it was moving at that slow rate of speed and was continuing to move past the platform, and the appellee came out upon the platform of the car and stepped on to the lower step and from there on to the platform at the station in a careful manner, and as he stepped on to the platform his feet slipped, or he stumbled and fell, by reason of the condition of the platform; that the platform was uneven, some boards being higher than others, the boards warped and the platform sunken in the center so that it was on a decline from the outer edge next to the track toward the center, but the point where the appellee alighted was more defective than some other parts of it. There was also evidence from which the jury may have properly found that appellee was unacquainted with the condition of the platform, and that the appellee was a man in full vigor and strength, and the place of alighting was on the platform of a public railway station, used to enter and depart from the cars run on appellant's railroad. Under this state of the evidence the question as to whether or not the appellee was guilty of contributory negligence was a fact to be left to the jury to determine.

The question as to whether or not a person who voluntarily alights from a moving train is guilty of negligence or not, was considered in the case of *Louisville, etc., R. R. Co.* v. *Crunk*, 119 Ind. 542, and in that case it was held that whether alighting from a moving train constitutes negli-

gence or not is a fact to be determined by the jury trying the cause, taking into consideration all the circumstances in connection with the alighting, and this, we think, is well supported by authorities which are considered and cited in that case. There was evidence to support the verdict.

Some other causes for a new trial are stated in the motion, and while they are not waived, as we understand counsel in their brief, they are not confidently relied upon for a reversal. The first in order is, appellee was asked by his counsel the following question : " In stepping off the train what effort, if any, did you make to prevent yourself from falling ?" Appellant objected on the ground that the question called upon the witness to give a conclusion or opinion. The objection was overruled, and the witness made the following answer: " Well, I don't know; I had a hold with my left hand and I stepped off careful, as careful as I could, and my feet kind of flew from under me, and how I did fall I can't exactly tell you how it did happen."

Appellant then moved to strike out from the answer the words " I stepped off careful, as careful as I could," and the court sustained the motion. The question called for the witness to state what he did and not a conclusion or opinion, and the court struck out all that portion of the answer stating a conclusion or opinion of the witness.

The next error complained of is sustaining an objection to cross-examining questions, propounded by appellant to appellee while a witness, in regard to whether or not he had drank intoxicating liquor at Gosport. The appellee had not been examined in chief as to what he did or where he was while at Gosport, but there is no available error in this ruling, as afterwards the appellee was called and the appellant's counsel fully cross-examined him upon the same subject, interrogating him as to what he drank at Gosport.

The appellant called one Dr. Schill as a witness. The doctor had assisted in dressing the appellee's injuries, and while engaged in such professional duties he conversed with

appellee, and the doctor was interrogated on the subject, and it was proposed to prove by him that he asked the appellee how the accident occurred, and that appellee answered that the company was not to blame for the accident, that he tried to get off the train before it stopped, and slipped off the step.

The objection was sustained to this evidence, on the grounds that the communication was privileged, and made to the doctor while engaged professionally in treating the appellee for the injury.

It is contended by appellant that this question was propounded not to ascertain the nature of the injury, but to learn whether the appellee was to blame for the injury. In this ruling there was no error.

The case of *Heuston* v. *Simpson*, 115 Ind. 62, and other decisions collected and cited in that opinion, are decisive of this question. The physician had no business to interrogate his patient for any purpose or object other than to ascertain the nature and extent of the injury, and to gain such other information as was necessary to enable him to properly treat the injury and accomplish the object for which he was called professionally, and such communications are privileged, and he can not disclose them. If the physician took advantage of the fact of being called professionally, and while there in that capacity made inquiries of the injured party concerning matters in which he had no interest or concern professionally, or for the purpose of qualifying himself as a witness, he can not be permitted to disclose the information received. The patient puts himself in the hands of his physician ; he is not supposed to know what questions it is necessary to answer to put the physician in possession of such information as will enable the physician to properly treat his disease or injury, and it will be conclusively presumed that the physician will only interrogate his patient on such occasions as to such matters and facts as will enable him to properly and intelligently discharge his professional duty, and the patient may answer

all questions propounded which in any way relate to the subject or to his former condition, with the assurance that such answers and communications are confidential, and can not be disclosed without his consent.

One Parisho was called and testified as a witness for the appellee, and the appellant offered in evidence that portion of the bill of exceptions taken in the former trial of this cause containing the testimony given by the witness on the former trial, for the purpose of contradicting or impeaching the witness, and it was objected to, and the court sustained the objection, and the appellant contends that such ruling was error. This ruling was proper.

It is contended that the court erred in giving and refusing to give certain instructions. One question presented by the exceptions to the instructions relates to the appellee's leaving the train while in motion, it being contended by the counsel for appellant that in so doing the appellee was guilty of contributory negligence which barred his right to recover, and the appellant requested an instruction on this theory, and the court refused to give it, and gave an instruction submitting the question to the jury to determine whether under all the circumstances the appellee was guilty of contributory negligence in leaving the train at the time, place and manner he did.

The instructions given by the court are in accordance with the rule as hereinbefore stated in passing upon the sufficiency of the evidence. The instructions given state the law on the subject, and the court properly refused those requested by the appellant.

It is further contended that the instructions given by the court in relation to the duty of the appellant in keeping its platform in repair, and as to appellee's knowledge of the condition of the platform at the time of the injury are erroneous, and instructions numbers two and four are particularly complained of in this respect. We do not deem it necessary to set out these instructions, as they must be considered and

construed together with all the other instructions in the case relating to the same matter; and when the instructions are considered and construed together they state the law to be that a railroad company, in constructing a platform for the use of passengers in getting on and off trains at a public railway station, intrusts its use to the public, and impliedly represents and gives out to the public that it is reasonably safe and sufficient for such purpose, and it is its duty to make it so as that it may be used safely in approaching and leaving trains, in any way in which passengers might reasonably and with reasonable care be expected to approach and leave trains; and that if the one at Mundy's, where appellee alighted, was not so constructed, or was allowed to become and remain out of repair, so that it could be used only by a careful attention to its structure, and if inattention as to its actual condition would imperil the safety of passengers, it would be insufficient, and the railroad company would be guilty of negligence in knowingly suffering and allowing it to remain in such condition; and that although the appellee may have previously known of its condition he would not be bound to keep such knowledge actually in mind; and if at the time he stepped from the train upon it he knew of its condition, yet he would not be required to abandon the use of it and seek some other place of approaching and leaving the train; and if he used care proportioned to the known danger and was injured by reason of such defect he would not be barred from recovery; and that it was for the jury to determine from all the facts and circumstances whether or not the appellee was guilty of negligence in leaving the train at the time, place and manner in which he left it; if he was guilty of negligence in so leaving the train, which contributed to the injury, he could not recover.

We think there was no error in these instructions. Certainly under the authorities we have heretofore cited the duty of the appellant in regard to the keeping of its platforms in repair is not too strongly stated against the appellant.

Railway companies are common carriers; they owe a duty to the public, and the public has the right to rely upon its performance. The fact that a person may have seen a platform out of repair at one time does not bind him to carry such defect in mind upon all future occasions when approaching or leaving a train at that point. The platform is in constant use by the employees of the company. They are bound to take notice of its condition. The presumption is, not that such defect will be allowed to remain, but that the company will discharge its duty to the public and repair the defect. If the defect were such as would naturally suggest to one of common understanding that it was dangerous, and place one in peril to pass over it to and from a train and with such knowledge one voluntarily steps upon it, or having knowledge of such defect within such a short space of time previous that the company could not reasonably be expected to have repaired it, under such circumstances one may be regarded as not having used ordinary care, and having recklessly entered upon it at his own risk, but we have no such case as that under consideration. The railroad company stands in the position of saying to the public, our platform is safe, and though it is not in such repair as the company is required to keep it, yet it is in common use by the public, and being so held out by the company, and used by the public, the appellee was not bound to abandon its use and seek some other way of entering and leaving the cars, and if in using it, as he is invited to do by the company, he exercises proper care proportioned to the apparent condition of the platform in leaving the train, and is injured by reason of the defects, we do not think it can be said that he is guilty of contributory negligence, and can not recover for the injury sustained by reason of the negligence of the company. We have a long line of decisions of this court which supports our conclusion, which hold that where there is a defect in a street a person is not bound to abandon the use of the street; that he may travel upon the street provided that it be not

such a defect as renders the street impassable, or would suggest to one of common understanding that to attempt to pass it would put one in peril; and if in the use of the street he exercise care proportioned to the known danger, he may reasonably expect to shun or avoid the defect, and if in doing so he is injured, he can recover. These cases are collected and cited in the cases of *Town of Gosport* v. *Evans*, 112 Ind. 133, *Brannen* v. *Kokomo, etc., G. R. Co.*, 115 Ind. 115, and *Town of Knightstown* v. *Musgrove*, 116 Ind. 121.

This disposes of all the questions presented. We think there is no error in the record.

Judgment affirmed, at costs of appellant.

Filed March 21, 1890; petition for a rehearing overruled June 4, 1890.