## SAGER ET AL. v. MOLTZ ET AL.

[No. 11,682.   Filed June 7, 1923.]

1. WILLS.—*Construction.*—*Unsoundness of Mind.*—*Jurisdiction of Court.*—In a proceedings to contest a will, where the proponents by their cross-complaint sought not only a construction of the will, but also averred that the contestants were claiming the will invalid for the reason that decedent was of unsound mind, and that in effect it was never executed by the decedent, such cross-complaint further averring that decedent was of sound mind and disposing memory, and entirely capable of making a will, that the claims of contestants were wholly unfounded, and constituted a cloud upon proponent's title under the will, and obstructed the performance of the executor's duty, *held*, that a court of equity had jurisdiction to determine whether testator was of sound mind.   p. 126.

2. WILLS.—*Cross-Complaint.*—*Equitable Jurisdiction.*—In a will contest where the proponents filed a cross-complaint against the contestants, alleging that contestant's claims constituted a cloud upon the proponents' title as devisees and legatees, presented issues of equitable jurisdiction, and the court having assumed jurisdiction, will retain it and decide all questions arising in the case.   p. 126.

3. WITNESSES.—*Physician.*—*Privileged Testimony.*—*Admissibility.*—*Waiver.*—The testimony of a physician as to the mental condition of a patient is privileged, but where such physician is called by the executor or one seeking to uphold the will to testify as to the soundness of testator's mind, such privilege is waived.   p. 128.

4. WITNESSES.—*Wills.*—*Construction.*—*Testimony of Conversation with Testator.*—*Admissibility.*—The rule that witnesses are not permitted to testify as to conversations had with testator prior to execution of his will apply to case where only the construction of the will is involved, and not in proceedings where the validity of the will is challenged because of the alleged unsoundness of testator's mind.   p. 129.

5. APPEAL.—*Review.*—*Continuance.*—*Discretion of Court.*—The granting or refusing of a continuance is largely within the discretion of the trial court, and such discretion will not be reviewed except for an abuse thereof.   p. 130.

6. CONTINUANCE.—*Withdrawal of Counsel.*—*Discretion of Court.*—Where an application for a continuance is based upon the withdrawal of two attorneys shortly before date of trial and that appellants were unable to secure services of other attorneys in time to make preparations; and their motion was not supported by affidavit showing reasons for withdrawal of the

attorneys, and appellants had taken a change of venue from the county after date set for trial therein, and the case involved a store and stock of goods that were deteriorating in value during the pendency of the cause, *held* the court did not abuse its discretion in refusing a continuance. p. 131.

7. JUDGMENT.—*Arrest of Judgment.*—*Failure to State Cause of Action.*—The only cause for which a judgment may be arrested is the insufficiency of the complaint to state a cause of action so as to authorize the rendition of a valid judgment thereon; that is, the complaint must wholly fail to state a fact essential to the statement of the cause of action. p. 132.

8. ACTION.—*Cross-Complaint.*—*Misjoinder of Causes.*—*Motion in Arrest of Judgment.*—In an action to contest a will, where the devisees and legatees sought to establish the will, and asked that it be construed and that its meaning and legal effect be determined as to certain devisees, that contestants be enjoined from further contesting the will, and that the proponents be adjudged the owners of the property devised to them, *held* that it was not error to overrule a motion in arrest of judgment for improper joinder of causes. p. 132.

9. PLEADING.—*Demurrer.*—*Misjoinder.*—*Waiver.*—Under §§344, 348 Burns 1914, Acts 1915 p. 415, where no demurrer was interposed on the grounds that the complaint improperly joined several causes of action, the defendant waived such objection. p. 133.

10. JUDGMENT.—*Determination of Heirship.*—*Establishment of Will.*—*Arrest of Judgment.*—In an action to establish a will, where it was necessary to determine the heirship of certain parties in order to determine their relation to the action and rights under the will, appellants, not being harmed by such determination, could not urge that a court of equity was without jurisdiction to determine such issue as grounds for motion for arrest of judgment. p. 133.

From Lake Circuit Court; *E. Miles Norton*, Judge.

Action by Cora B. Sager and others against Fred Moltz and others. From the judgment for defendants, the plaintiff appeals. *Affirmed.*

*Frank B. Pattee* and *Herbert F. Johnson*, for appellants.

*William Daly, Edmund J. Freund, Owen L. Crumpacker* and *Grant Crumpacker*, for appellees.

NICHOLS, J.—William H. Vail of Valparaiso, Porter

county, died January 12, 1920, leaving his last will and testament, disposing of the major portion of his estate amounting to about $35,000. The instrument was duly admitted to probate by the Porter Circuit Court on January 15, 1920, and appellee Peirce, executor, duly qualified as such. On June 21, 1920, the appellants instituted an action in the Porter Circuit Court against appellees, contesting the said will. Appellants are the only surviving heirs at law of said decedent and the appellees other than Peirce are devisees under said will. To the complaint appellees filed an answer of general denial. At the September term, 1920, of said court appellees filed a cross-complaint against appellants by which they sought a decree in effect establishing said will as the last will and testament of said decedent, that the same was duly executed, construing the same and determining its meaning and legal effect as to certain devises therein, enjoining and restraining appellees from further contesting said will, and adjudging that the respective appellees are the owners of the property in said will purporting to be devised and bequeathed to them respectively. Appellants appeared to said-cross-complaint by their attorneys of record and filed answer thereto in general denial. Said cross-complaint was not otherwise challenged. At the regular September term of said court appellants applied for and obtained a change of venue to the Lake Circuit Court and the cause was regularly set for trial therein on November 29, 1920, on which date appellants asked leave to withdraw their answer to the cross-complaint and address other motions or demurrers thereto, which request upon their part was denied by the court. Thereupon appellants moved that said cross-complaint be docketed as a separate cause of action, which motion was sustained and the cross-complaint was so docketed in the said Lake Circuit Court, said cross-complainants being designated

as plaintiffs and appellants as defendants in such newly-created cause, and the cross-complaint standing as the complaint therein. Thereupon appellants dismissed their action to contest said will and filed on said November 29, 1920, a motion to continue this cause, which, as stated aforesaid, was based upon said cross-complaint. Appellants' motion for a continuance was sustained and the trial of the same continued to November 30, 1920, at which time a jury was waived and the cause was submitted to the court for trial. The court, after hearing the evidence, on December 17, 1920, entered a general finding for appellees upon all of the issues raised. No judgment was entered on this finding at the time. Afterwards, on January 7, 1921, and before any judgment had been entered, appellants filed a motion for a new trial which was overruled, and on the same date appellants filed a motion in arrest of judgment, which was overruled and judgment entered in favor of appellees. From this judgment, this appeal is prosecuted. Appellants have assigned five errors in this court. Appellees contend that the only errors properly assigned are those which relate to the action of the trial court in overruling appellants' motion for a new trial, and in overruling appellants' motion in arrest of judgment.

Appellants assign as error and contend that the court had no jurisdiction in the proceedings herein to hear and determine the question of the soundness or unsoundness of mind of the testator, and the due execution of the will, and to cut off and bar the rights of appellants to contest the validity thereof as provided by law. But in this contention appellants cannot prevail. The cross-complaint seeks not only a construction of the will of the said deceased, but it also contains averments that appellants were claiming that such will was invalid and without force and effect for the reason that the decedent

at the time of its execution was of unsound mind, that it was unduly executed, and that in effect it never was executed by such decedent. Averments then follow to the effect that at the time of the execution of such will the decedent was of sound mind and disposing memory, and entirely capable of making a will, that the claims of appellants were wholly unfounded, and constituted a cloud upon the title of the property devised to appellants, and an obstruction to the performance of the duty of the executor. The prayer of the cross-complaint seeks a decree establishing the title of the respective appellees to the property devised to them, restraining appellees from contesting the validity of the will and for all other and proper relief.

The action presented by the cross-complaint was one of equitable jurisdiction. It is more than an action to construe the will. It is an action to quiet the 1, 2. respective titles of the appellees as devisees and legatees thereunder, as well as an action to construe. It is a well-established principle that where equity assumes jurisdiction it will retain it, and decide all questions arising in the cause. *Faught* v. *Faught* (1884), 98 Ind. 470, and other cases there cited. Clearly, the court under the issues was required not only to construe the will involved, but to pass upon its validity, and its validity must of necessity depend upon the soundness of mind of the testator and its execution. These questions, therefore, were clearly within the jurisdiction of the trial court. We quote from *Faught* v. *Faught, supra,* on p. 473, as follows: "No cause of action could have existed without proof of a valid will. It could not have existed because the title, and the only title, was founded, by explicit and traversable allegations, upon the provisions of the will, and because, if there was no valid will, there was in legal contemplation no instrument for construction. If no more had

been sought than a construction of the terms of the will, its validity would have been in issue.   In asserting that there was a will entitled to judicial construction, the appellee asserted that it was valid.   It can not be true in any case that a court can be called upon to fritter away its time in deciphering instruments which have no legal effect, and this must result if it be conceded that the proceeding to secure the construction of a will does not include the question of its validity.   Courts of chancery, organized under the old system, often construed wills and entertained suits for that purpose.   The first step taken in all such suits was to ascertain whether the will was valid.   2 Story, Equity §1146." Other authorities 'to the same effect are: *Carmichael* v. *Adams* (1883), 91 Ind. 526; *Spidell* v. *Johnson* (1890), 128 Ind. 235, 239, 25 N. E. 889; *Miller* v. *Jackson Township* (1912), 178 Ind. 503, 99 N. E. 102.   We hold that the court has jurisdiction to try the question of the soundness of mind of the decedent and the due execution of his will.

Appellants contend that there was no evidence to support the finding of the court, which was a general finding, that the decedent was the owner of the property by him devised and bequeathed respectively to the appellees, but they must fail in this contention for, in the absence of evidence to the contrary, there is ample direct evidence, or evidence from which there was reasonable inference to sustain the finding of the court, that the decedent was the owner at the time of his death of all of the items of property by him disposed of by his will.

Appellants say that it was error for the court to hear certain evidence as to whether the decedent was of sound or unsound mind because such question was not within the issues; but, as we have heretofore determined that the court had jurisdiction to try the question of the

soundness of mind of the decedent, we need therefore to give this question no further consideration.

Appellants complain of the action of the court in overruling their objection to permitting witness J. H.

3. Stoner to testify that the decedent was of unsound mind, the objection being based upon the fact that the witness was the physician of the deceased, and that for that reason was disqualified to testify as to the soundness or unsoundness of mind of the testator. It is the contention of appellants that such evidence was privileged and such as the physician was not authorized to divulge. We have to say, were there an absence of other controlling circumstances, that there is merit in appellants' contention.

In *Williams* v. *Johnson* (1887), 112 Ind. 273, 275, 13 N. E. 872, the court says: "A physician is not permitted to disclose the result of observations or examinations made by him upon the person of his patient, unless with the consent of the latter, or unless the patient in some way waives his privilege." This authority is cited with approval in *Pittsburgh, etc., R. Co.* v. *O'Connor* (1908), 171 Ind. 686, 85 N. E. 969, where other authorities on this point are cited. And in *Pence* v. *Myers* (1913), 180 Ind. 282, 101 N. E. 716, the court says that, "It is well established that in a will contest, a physician, attendant on a testator, at the time of his death, should not be permitted to give testimony tending to strike down the will as to the condition of the testator's mind or as to the disease from which he suffered, the cause of duration of his illness, or the cause of his death, unless the objection thereto is waived by him, who stands in the place of the decedent." From these authorities it clearly appears that, unless there was such a waiver upon the part of the one who stands in the place of the decedent, the admission of such testimony was error. But in *Morris* v. *Morris* (1889), 119 Ind.

341, 21 N. E. 918, which involved a will contest based upon the alleged unsoundness of mind of the testator one of the appellees was the administrator with the will annexed of the estate of the deceased, and it appears by the record that he waived the privilege of excluding the testimony of the attending physician and in fact called him as a witness, and it was held that he had the right as the representative of the testator to call the physician who attended him and by him to prove the condition of his mind at the time that the will was executed. This authority is cited on this point with approval· in *Pittsburgh, etc., R. Co.* v. *O'Connor, supra,* where the court says: "This privilege may be waived by the patient or his legal representatives, by examining the physician as a witness concerning said privileged communication." The principle is therefore of controlling force in this case, for one of the appellees was the executor of the will which was in contest. The authority is also cited on this. point with approval in. *Manufacturers' Life Ins. Co.* v. *Brennan* (1921), (C. C. A.) 270 Fed. 173; *In re Flint* (1893), 100 Cal. 391, 34 Pac. 863; *Harrison* v. *Sutter St. Ry. Co.* (1897), 116 Cal. 156, 47 Pac. 1019, and in *Auld* v. *Cathro* (1910), 20 N. Dak. 461, 128 N. W. 1025, 32 L. R. A. (N. S.) 81, Ann. Cas. 1913A 90N, to the effect that only the one seeking to uphold the will may waive the privilege of physician's testimony and not the one seeking to break it. In the light of these authorities the appellees, one of whom was the executor of the will, having called the physician to testify appellants may not be heard to complain.

Appellants' authorities on the alleged error of the court in permitting witnesses to testify as to conversations had with the testator before the execution of his will are not in point as they apply only to cases where the construction of the will is in-

volved, and not to cases in which its validity was challenged because of the alleged unsoundness of mind of the testator.

Appellants have assigned as one of their reasons for a new trial that the court erred in overruling their application for a continuance of the trial of said cause. Appellee contends, however, that no question is presented by the record because it affirmatively appears therefrom that appellants' motion for a continuance was sustained. It appears, however, that while the motion for the continuance was sustained the continuance was granted only from three o'clock of the afternoon of November 29, 1920, to the morning of November 30, 1920, when the cause was again called for trial. There was no other application for a continuance than the one which was filed on November 29, 1920, and which was sustained. There was, however, an objection upon the part of appellants to proceeding with the trial of the cause on the morning of November 30, stating as a ground for their objections thereto substantially the grounds set up in their motion for a continuance filed on the previous day. Without deciding as to whether the court's action in continuing the case for trial only until the following morning virtually amounted to overruling the motion for a continuance although such motion was technically sustained, we proceed to the examination of the motion for the purpose of determining as to whether upon the facts stated therein the court abused its discretion in continuing the case only until the following morning. For this purpose we shall concede without deciding, that the action of the court aforesaid amounted virtually to overruling appellants' motion for a continuance. In examining this question it must be kept in mind that the matter of granting a continuance is largely within the discretion of the trial court, and that such discretion will not be

5.

reviewed except for an abuse thereof. *City of Hunt-ington* v. *Folk* (1899), 154 Ind. 91, 54 N. E. 759; *Cerealine Mfg. Co.* v. *Bickford* (1891), 129 Ind. 236, 28 N. E. 545; *Post* v. *State, ex rel.* (1896), 14 Ind. App. 452, 42 N. E. 1120; *Schwartz, Admr.,* v. *Parsons, Gdn.* (1899), 22 Ind. App. 340, 53 N. E. 785.

Appellants' application for a continuance is based upon the ground that two of their attorneys withdrew from the case shortly before the date set for trial, and that they had been unable to secure the services of other attorneys in time to make due preparation for the trial. The application was not made by any one of appellants but by the husband of appellant Flora M. Dunlap, and we find no statement in the application that it was made for or on behalf of appellants or any one of them. It may be justly contended, however, that by reasonable inference, because of its contents, it was made on behalf of appellants Cora B. Sager and Flora M. Dunlap. None of appellants was present. Those other than the above named appellants may have had ample notice of the withdrawal of said attorneys, and may have been responsible therefor. Edward Lynn of Rochester, New York, a practicing attorney in good standing and a brother-in-law of appellant Cora B. Sager had been originally employed on behalf of appellants, and came to Valparaiso and secured the services of local attorneys to prosecute the action. While it appears by affidavit that it was not the intention that said Lynn should assume the principal charge of the case, yet it does not appear from the affidavit that he was not an attorney for appellants at the time of the trial, and his absence is unaccounted for. Davis and Starr were the attorneys employed by said Lynn to represent appellant and as appears by the affidavit they were reputable attorneys of Gary, Indiana, and there is no reason given for the withdrawal of such attorneys

from the case other than such withdrawal was without any fault on the part of appellants. This conclusion of appellants unexplained is not sufficient to control the discretion of the trial court as to a continuance. It will not be presumed that reputable attorneys engaged in the practice of law will deliberately and wilfully withdraw from the cause without sufficient reason therefor and without communicating such intentions to their clients. The motion for a continuance should have been supported by the affidavit.of these attorneys, or in lieu thereof by some one acquainted with the circumstances, stating such facts as would show to the court that appellants were without fault. The case had been set for trial in Porter county and appellants had taken a change of venue from that county to Lake county, and there was present in the Lake Circuit Court at the time the cause was set for trial in that court a large number of witnesses. There was a store and a stock of goods involved that of necessity were deteriorating in value during the pendency of said cause. It does not appear that after Dunlap learned of the withdrawal of the attorneys any of the appellants did anything to employ counsel or induce the firm of attorneys to remain in the case. Under such circumstances we must hold that the court did not abuse its discretion in requiring appellants to go to trial on November 30, 1920.

Appellants contend that the court erred in overruling their motion in arrest of judgment, stating as a ground therefor that several causes of action are improp-

7, 8. erly joined in appellees' complaint. We have heretofore in effect passed upon this question of improper joinder when we held the issues presented were properly within the jurisdiction of the court in this action. It is thoroughly settled in this state that the only cause for which a judgment may be arrested is the insufficiency of the complaint to state a cause of

action so as to authorize the rendition of a valid judgment thereon; that is, the complaint must wholly fail to state a fact that is essential to the statement of the cause of action attempted to be stated. 2 Watson, Revision of Works' Practice §1909, and the numerous authorities there cited to sustain the rule. Measured by this rule, appellants' motion in arrest of judgment is not well taken.

Under §344 Burns 1914, Acts 1911 p. 415, one of the grounds for demurrer to a complaint is that several causes of action have been improperly joined.

9. Section 348 Burns 1914, Acts 1915 p. 415, provides, as here applied, that if no objection is taken by demurrer the defendant shall be deemed to have waived such objection. There was no demurrer filed to appellees' complaint, so that, though appellants had stated proper causes for an arrest of judgment, they had waived the same by failing to demur to the complaint, except only as to the jurisdiction over the subject matter of the action.

Appellants contend that the court was without jurisdiction to determine the heirship of appellees Jessee and that therefore the motion in arrest of judg-

10. ment should be sustained. But we do not so understand. It was necessary to determine the fact that appellees Jessee were children of Theophilus S. Jessee in order to determine their relation to the action and rights under the will, and certainly appellants were not harmed by such determination. Nor may appellants complain that there was no direct affirmative averment in the complaint that the testator of the will involved owned the property therein devised and bequeathed at the time of his death. If 'it was not so owned by him then appellees received nothing by reason of the terms of the will, and appellants were not harmed thereby. We think, however, that by reason-

able interpretation, the averments of the complaint are sufficient as to the ownership of the property of the testator at the time of his death. The motion in arrest of judgment was properly overruled.

By an examination of the whole record we are satisfied that a right result has been reached. Judgment affirmed.

McMahan, C. J., not participating.