STAYNER ET AL. *v.* NYE ET AL.

[No. 28,549. Filed April 26, 1949.]

232

*Edgar W. Atkinson* and *Hugh G. Sanders,* both of Auburn, for appellants.

*Mountz & Mountz,* of Garrett, and *Wood & Wood,* of Angola, for appellees.

EMMERT, J.—This is an appeal from a judgment setting aside a deed executed by Amos W. Beach on June

24, 1944, to the appellant, Audrey L. Stayner, for 120 acres of land in Steuben County and quieting the title of the appellees to said real estate. The cause was tried by the court without a jury, and a general finding was made for all appellees upon the issues joined on various paragraphs of complaint which sought to quiet title to the real estate, and to set aside the deed thereto by reason of fraud and undue influence practiced upon the grantor. A commissioner was appointed to execute a deed to the appellees in conformity with the judgment.

The motion for a new trial, the overruling of which is the error assigned on appeal, challenges the sufficiency of evidence to sustain the finding, and the rulings of the trial court in permitting two physicians who attended the grantor to testify as to his physical and mental condition as observed by them during the time they were his physicians, after the appellees, who were the grantor's only surviving heirs, and the administrator of the estate of the grantor had waived objections as to the competency of the physicians.

On appeal, when the sufficiency of the evidence is questioned, this court will disregard conflicting evidence, and assume that the evidence to support the finding is true, "and will give to it every favorable inference which may be reasonably and fairly drawn from it. *Mazelin* v. *Rouyer* (1893), 8 Ind. App. 27, 35 N. E. 303; *Chicago, etc. R. Co.* v. *Vandenburg* (1905), 164 Ind. 470, 73 N. E. 990." *Klingaman* v. *Burch* (1940), 216 Ind. 695, 699, 25 N. E. 2d 996. The trial court was justified in finding that the grantor decedent, Amos W. Beach, at the time he executed the deed in question on June 24, 1944, was 86 years of age, afflicted with senile dementia, arthritis, heart disease, arteriolosclerosis, and cancer. He had lost control of his bodily functions, and was disoriented and mentally

confused. He was bedfast at the time the deed was executed in the Cameron Hospital, and his condition did not improve before the time of his death, August 9, 1944. He was a person of unsound mind when the deed was executed.

The deed purported to convey to the appellant, Audrey L. Stayner, a stranger to his blood and estate, the remainder in fee, subject to the life estate of the grantor, and all the grantor's interest in the crops and "his interest in all personal property now located on said farm, including household furniture and goods located in said dwelling house and other goods, including farm tools and other small articles on said farm." The deed provided the grantee should keep and furnish a home for the grantor, pay the cost of his last illness, $500 for funeral expenses and erect a monument to cost not less than $350, and to have inscribed thereon the name of the grantor and his former wife, with dates of the birth and death of each. The market value of the farm was $7,000, on which there was a mortgage lien in the sum of $675. The grantee cared for the grantor for a period of thirty-four days after he left the Cameron Hospital on July 6th. The consideration for the conveyance was so grossly inadequate that it shocks the conscience of the court. Such transactions have been condemned by this court.

In *Ashmead* v. *Reynolds* (1893), 134 Ind. 139, 142, 143, 33 N. E. 763, this court stated the basis for granting relief in the following language:

"In *Wray* v. *Wray*, 32 Ind. 126, the following is quoted and approved: 'Where a party is weak and enfeebled in mind by reason of age, or from any other cause, and another takes advantage of such weakness, and by any artifice, or cunning, or undue influence he may possess, or by any improper practices, induces such person to execute a contract

which in the free use and exercise of his deliberate judgment he would not have entered into, such. a contract would be set aside for fraud.'

".  .  .

"In *Allore* v. *Jewell*, 94 U. S. 506, a case similar to this, Mr. Justice Field, speaking for the court, said: 'It is not necessary, in order to secure the aid of equity, to prove that the deceased was at the time insane, or in such a state of mental imbecility as to render her entirely incapable of executing a valid deed. It is sufficient to show that, from her sickness and infirmities, she was at the time in a condition of great mental weakness, and that there was gross inadequacy of consideration for the conveyance. From these circumstances, imposition or undue influence will be inferred.' "

The trial court properly found the deed was procured by undue influence and fraud. The finding is sustained by the evidence and is not contrary to law.

There was no error in permitting the two physicians to testify as to the physical and mental condition of the grantor. Under the common law communications between a physician and patient were not privileged. *Myers* v. *State* (1922), 192 Ind. 592, 137 N. E. 547, 24 A. L. R. 1196, and cases therein cited; 8 Wigmore on *Evidence*, § 2380 (3rd Ed.). The material part of our statute on competency of physicians now provides:

"The following persons shall not be competent witnesses:

".  .  .

"Fourth. Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases." Section 2-1714, Burns' 1946 Replacement (Acts 1881 (Spec. Sess.), ch. 38, § 275, p. 240.) [1]

---

[1] The earlier statute (Ch. 27, Acts 1861, p. 51) provided, ". . . physicians as to any matters confided to them in the course of

It has been consistently construed not to create an absolute incompetency, but a privilege for the benefit of the patient, which he may waive. *Penn Mutual Life Ins. Co.* v. *Wiler* (1885), 100 Ind. 92, 100, 101, 50 Am. Rep. 769; *Morris* v. *Morris* (1889), 119 Ind. 341, 344, 21 N. E. 918; *Lane* v. *Boicourt* (1891), 128 Ind. 420, 423, 27 N. E. 1111, 25 Am. St. 442; *P. C. C. & St. L. Ry. Co.* v. *O'Conner* (1908), 171 Ind. 686, 85 N. E. 969; *Schlarb* v. *Henderson* (1936), 211 Ind. 1, 4 N. E. 2d 205.

The purpose of the statute creating the privilege has been well stated by this court in *Penn Mutual Life Ins. Co.* v. *Wiler* (1885), *supra*:

> "The purpose of the statute is not the suppression of truth needed for reaching correct results in litigation, though this may sometimes incidentally occur (as it may also in other instances of exclusion on the ground of wise policy), but the purpose is the promotion and protection of confidence of a certain kind, the inviolability of which is deemed of more importance than the results sought through compulsory disclosure in a court of justice. Notwithstanding the absolutely prohibitory form of our present statute, we think it confers a privilege which the patient, for whose benefit the provision is made, may claim or waive. It gives no right to the physician to refuse to testify, and creates no absolute incompetency. To hold otherwise would result in many cases in obstructing justice without subserving the purpose of the statute. . . ."

The effect of the statute in prohibiting the ascertainment of truth in many controversies has often subjected its policy to strong criticism. 8 Wigmore on *Evidence,* § 2380A (3rd Ed.). Because of this result, and under the rule that statutes in derogation of common law will

---

the duties of their profession . . . shall not, in either case, be included in the second section of this act, or be competent witnesses, unless with the consent of the party making such confidential communications . . . "

be strictly construed, its prohibitions are not to be extended by implication. *Myers* v. *State* (1922), 192 Ind. 592, 137 N. E. 547, 24 A. L. R. 1196; *General Acc. Fire & Life Assur. Co.* v. *Tibbs* (1936), 102 Ind. App. 262, 2 N. E. 2d 229.

Upon principle, if the patient during his lifetime could waive the privilege, there is no reason why his heirs or personal representative should not waive the privilege after his death.

The following language of Professor Wigmore in his treatise on *Evidence* (3rd Ed.), Vol. 8, § 2391, p. 840, is particularly applicable to the facts in this appeal:

"The *personal representative* of the deceased may waive the privilege. One who is entrusted with the management of the deceased's property may surely be trusted to protect the memory and reputation of the deceased, in so far as it is liable to injury by the disclosure of his physical condition when alive. It is incongruous to hold that the person who manages the litigation of the deceased's property-interest has no power to waive rules of evidence for the purpose of advancing those interests. The power of an heir may also be conceded, if we remember that the heir, first, is at least equally interested in preserving the ancestor's reputation, and, secondly, has an equal moral claim to protect the deceased's property-rights from unwarranted diminution. The futility, under the circumstances, of predicating any privilege is the more apparent when (as in the usual case) the issue turns upon the fact of the *testator's sanity*, which is so bruited publicly in the litigation that the pretense of preserving secrecy is a vain one. . . ." For an exhaustive discussion of the Indiana authorities, see Vol. 23 Indiana Law Journal (April, 1948), p. 295 et seq.

The case of *Studabaker* v. *Faylor* (1912), 52 Ind. App. 171, 98 N. E. 318, involved facts very similar to the present appeal. All the heirs of Catherine Faylor sued to set aside a deed on the grounds that the grantor was insane and the conveyance was obtained through fraud. The administrator, though not a party to the action, expressly waived the privilege, and the Appellate Court, in holding it was proper for the physician to testify, said:

"Furthermore, under authorities above cited, the right to waive the privilege of confidential communications, after the death of Mrs. Faylor, in litigation affecting her estate, was lodged in those who represented her and stood in her place. Even if appellant could be considered her representative, he has, as we have seen, waived his right to object. It is generally conceded that heirs may waive this privilege. 4 Wigmore, Evidence § 2391. However, the heirs or devisees seeking to overthrow a will may not waive it as against other heirs or devisees. *Towles* v. *McCurdy, supra* [163 Ind. 12, 71 N. E. 129]. In the case at bar all the heirs were plaintiffs, and they not only called Dr. Cook to testify, but the record in the present appeal shows that all of them expressly waived the privilege. It is unquestioned that the administrator has the power to waive the privilege in order to conserve the interests of the estate. *Scott* v. *Smith* (1908), 171 Ind. 453, 85 N. E. 774. The administrator of decedent's estate, though not a party to the suit, was present at the trial, testified, and likewise expressly waived the privilege. All the persons in whom there could be a right to insist on the privilege have either expressly waived the privilege, or have impliedly waived it by standing by and allowing the testimony to be given."

In actions involving the validity of a will, the personal representative may waive the privilege in support of his trust. *Morris* v. *Morris* (1889), 119 Ind. 341, 344, 21 N. E. 918, *supra; Sager* v. *Moltz* (1923), 80 Ind.

App. 122, 139 N. E. 687. The case of *Heaston* v. *Krieg* (1906), 167 Ind. 101, 77 N. E. 805, 119 Am. St. 475, where the controversy involved the validity of a subsequent unprobated will, and the executor of the first will was not permitted to waive the competency of the physicians in an attack upon the last will, must be regarded as an anomalous exception to the general rule, and the authority thereof strictly limited to the peculiar facts of that case. In *Towles* v. *McCurdy* (1904), 163 Ind. 12, 71 N. E. 129, the controversy was between the children and heirs of the testator, which is not the case in the present appeal.

In this appeal, both the personal representative of the deceased and all of his heirs at law waived the privilege. Although the litigation involved the real estate, the administrator had an interest in recovering it back for the heirs, since in the event the personal property becomes insufficient to pay debts and claims of the estate, the real estate would be subject to being sold to pay debts and claims. The same instrument which conveyed the real estate also transferred title to personal property. The children of the intestate would be presumed to have a greater interest in protecting the memory of their father than any strangers in blood, who, in this case, were guilty of fraud upon the intestate. To permit strangers to the estate to close the door to the ascertainment of the truth would encourage the perpetration of the grossest kind of fraud upon aged and infirm persons. It cannot be said that grantees, who are strangers to his estate, represent the decedent or his interests. The evidence was properly admitted.

Judgment affirmed.

NOTE.—Reported in 85 N. E. 2d 496.