ELVA COLLINS *v.* MURRAY E. BAIR.

[No. 371S77. Filed November 20, 1969. Rehearing denied January 6, 1970. Transfer denied March 30, 1971.]

232

*Arthur A. May, Crumpacker, May, Levy & Searer,* of South Bend, for appellant.

*David L. Matthews,* of South Bend, for appellee.

HUNTER, J.—Petitioner is before this court on an application for transfer seeking review of the Appellate Court's opinion in *Collins* v. *Bair* (1970), 252 N. E. 2d 448. It was there held that when a litigant "by way of complaint, counterclaim or affirmative defense, places in issue his physical or mental condition, then he automatically waives the privilege granted by the Act (the physician-patient privilege granted by Ind. Ann. Stat. § 2-1714 [Fourth] (1968 Repl.)) as to all matters causally or historically related to the physical or mental condition in issue." 252 N. E. 2d at 455. It is with this holding that we will concern ourselves.

This matter had its origin in a suit for damages arising out of personal injuries allegedly received in an automobile accident. At trial, plaintiff (appellee) introduced testimony by physicians treating him for injuries. Defendant (appellant) sought to introduce testimony by one Dr. George Holiday, a licensed chiropractor which, according to his offer to prove, would have established that Holiday had treated plaintiff *prior* to the time of the automobile accident for the medical condition sought to be charged to defendant as a result of defendant's alleged negligence. Plaintiff objected to the introduction of the evidence on the grounds that its

admission would violate the physician-patient privilege;[1] on the basis of the objection, it was excluded. We must therefore decide whether the act of placing one's mental or physical condition in issue by way of claim or defense is one from which a waiver of the statutory physician-patient privilege may be implied.

As noted, the physician-patient privilege has been statutorily recognized in this state:

"The following persons shall not be competent witnesses:
. . .

Fourth. Physicians, as to matters communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases." Ind. Ann. Stat. § 2-1714 (1968 Repl.)

At common law, no such privilege existed. *Stayner* v. *Nye* (1949), 227 Ind. 231, 85 N. E. 2d 496; *Myers* v. *State* (1922), 192 Ind. 592, 137 N. E. 547. The grant of privilege being in derogation of the common law, we have felt constrained to give the statute a strict construction. *Stayner* v. *Nye, supra; Hammell* v. *State* (1926), 198 Ind. 45, 152 N. E. 161; *Springfield Fire & Marine Insurance Co.* v. *Fields* (1916), 185 Ind. 230, 113 N. E. 756; *Thornburg* v. *American Strawboard Co.* (1895), 141 Ind. 443, 40 N. E. 1062. With this in mind, our decisions, for example, have served to condition the applicability of the statutory privilege upon the existence of a formal physician-patient relationship. *Myers* v. *State, supra; Laurie Co.* v. *McCullough* (1910), 174 Ind. 477, 90 N. E. 1014; *Seifert* v. *State* (1903), 160 Ind. 464, 67 N. E. 100; *Bower* v. *Bower* (1895), 142 Ind. 194, 41 N. E. 523. Likewise it has been held that the privilege applies only to those communications necessary to treatment or diagnosis. *Myers* v. *State, supra; Pennsylvania Co.* v. *Marion* (1890), 123 Ind. 415, 23 N. E. 973. Further, and of great pertinence

1. The Appellate Court rightly held that the word "physician" encompasses a doctor of chiropractic medicine. *Dean* v. *State ex rel. Board of Medical Registration, etc.* (1954), 233 Ind. 25, 116 N. E. 2d 503; *Lucas* v. *State ex rel. Board of Medical Registration, etc.* (1951), 229 Ind. 633, 99 N. E. 2d 419.

here, we have indicated that the privilege belongs to the patient and may effectively be waived. *Stayner* v. *Nye, supra; Pence* v. *Myers* (1913), 180 Ind. 282, 101 N. E. 716; *Lane* v. *Boicourt* (1891), 128 Ind. 420, 27 N. E. 1111.

In previous cases, we have had occasion to determine whether, under a specified set of circumstances, an implied waiver of the privilege could be inferred. Thus, we held that by admitting into evidence privileged communications respecting one physician did not waive the right as to others, *Penn Mutual Life Insurance Co.* v. *Wiler* (1885), 100 Ind. 92, except where the other physician or physicians were present or consulted on the matter, *Schlarb* v. *Henderson* (1936), 211 Ind. 1, 4 N. E. 2d 205. Also, the act of submitting to a physical examination by a physician of one's choice for the purpose of using him as a witness at trial did not constitute a waiver, *Acme-Evans Co.* v. *Schnepf* (1938), 214 Ind. 394, 14 N. E. 2d 561; furthermore, mere testimony by a patient that a given physician had rendered treatment did not waive the veil of privilege. *Williams* v. *Johnson* (1887), 112 Ind. 273, 13 N. E. 872.

Where, however, a party pursues a course of conduct of such a nature that a failure to find a waiver would be inimical to justice, this court had found such a waiver by implication. Such a situation has been recognized by this court to exist where a party institutes a mal-practice suit against his physician and testifies as to the nature of the treatment rendered. *Lane* v. *Boicourt, supra.* As we noted in the *Lane* case:

"If a patient makes public in a court of justice the occurrences of the sickroom for the purpose of obtaining a judgment for damages against his physician, he cannot shut out the physician himself, nor any other who was present at the time covered by the testimony. When the patient voluntarily publishes the occurrence, he cannot be heard to assert that the confidence which the statute was intended to maintain inviolate continues to exist. By his voluntary act he breaks down the barriers, and the professional duty of secrecy ceases. It would be monstrous if the patient himself might detail all that occurred, and yet compel the

physician to remain silent." *Lane* v. *Boicourt, supra,* 128 Ind. at 423, 27 N. E. at 1113.

Although the mal-practice action is an extreme case in which it might be said that the equities of the situation demand a finding of waiver as to the matters placed in issue, the *Lane* case nevertheless demonstrates our concern that the privilege not be distorted by application in circumstances *where the policy behind the rule is not served.* That the Legislature was recognizing a strong public policy by its enactment of § 2-1714 may not be doubted. The character of the specific policy implemented, however, as it relates to the physician-patient privilege, should remain in sharp focus lest its observance become rote formality no longer prompted by considerations causing its initial advancement.

The privilege has been justified on the basis that its recognition encourages free communications and frank disclosure between patient and physician which, in turn, provide assistance in proper diagnosis and appropriate treatment. To deny the privilege, it was thought, would destroy the confidential nature of the physician-patient relationship and possibly cause one suffering from a particular ailment to withhold pertinent information of an embarrassing or otherwise confidential nature for fear of being publicly exposed.

Although necessarily resulting, the purpose of the privilege *was not* to suppress the truth:

"The purpose of the statute is not the suppression of truth needed for reaching correct results in litigation, though this may sometimes incidentally occur (as it may also in other instances of exclusion on the ground of wise policy), but the purpose is the promotion and protection of confidence of a certain kind, the inviolability of which is deemed of more importance than the results sought through compulsory disclosure in a court of justice." *The Penn Mutual Life Insurance Co.* v. *Wiler, supra,* 100 Ind. at 100.

In the case where a privilege is acknowledged to exist, quite obviously two policies of the law are in direct conflict. On the

one hand is a policy which dictates exclusion of material and relevant evidence for its effectuation; on the other is the policy which favors full disclosure of all relevant facts at trial in order to arrive at a just determination of the issues presented. While the latter must give sway to the former where applicable, it would seem unwise indeed to give *unwarranted* effect to the former so as to utterly and unreasonably frustrate the fact finding process. This is especially so where one seeking to invoke the privilege has engaged in conduct which undermines the legitimacy of extending it to cover his situation.

In our opinion, when a party-patient places his mental or physical condition in issue, he does an act which is totally incompatible with an invocation of the physician-patient privilege as to that condition,—given the legal basis upon which the privilege is premised. Dean Wigmore has most ably described the resulting inconsistency:

". . . the *bringing of an action* in which an essential part of the issue is the existence of physical ailment should be a *waiver* of the privilege for all communications concerning that ailment. The whole reason for the privilege is the patient's supposed unwillingness that the ailment should be disclosed to the world at large; hence the bringing of a suit in which the very declaration, and much more the proof, discloses the ailment to the world at large, is of itself an indication that the supposed repugnancy to disclosure does not exist. By any other conclusion the law practically permits the plaintiff to make a claim somewhat as follows: 'I tender witnesses A, B and C, who will openly prove the severe nature of my injury. But I object to the testimony of witness D, a physician called by the opponent to prove that my injury is not so severe as I claim, because it is extremely repugnant to me that my neighbors should learn the nature of my injury!' The position is especially absurd when (as is often the case) the dreaded disclosure, which the privilege prevents, is the fact that the plaintiff has suffered no injury at all." 8 Wigmore on Evidence, § 2389 (McNaughton Ed., 1961)

It is doubtful that the point can be made more persuasively. Where a party-patient, of his own, does an act which will

require disclosure of a condition otherwise protected from disclosure, there would appear to no longer be a basis upon which to allow that party to selectively suppress relevant medical evidence pertaining to the same specific condition. By so holding we do not discount the concern of the Indiana General Assembly that the confidential nature of the physician-patient relationship be preserved at the cost of rendering certain evidence inadmissible. Nevertheless, acknowledgment of the privilege's continued existence in a particular case can only be rationalized where such acknowledgment serves to effectuate the purpose for which the privilege was designed,—*the preservation of confidential communications*. Where a patient in effect elects to publish the substance of these communications, the privilege's objective can no longer be legitimately accomplished and the privilege must be deemed waived. By holding otherwise, we would fail to serve the policy underlying the physician-patient privilege while coincidentally frustrating the truth-determining process.

Having determined that a patient waives his physician-patient privilege by pursuing a course of conduct inconsistent with a continued observance of the privilege, we are left with the question of what *event* should operate to trigger the waiver and the extent to which such a waiver is effective. The Appellate Court, as previously noted, held that the privilege is deemed waived as to all matters causally or historically related once one puts a mental or physical condition in issue whether by claim, counter-claim or affirmative defense.

Subsequent to the Appellate Court's disposition of this case this court amended Trial Rule 35(B)(2) to read as follows:

"By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition."

From the foregoing it is clear that an event triggering a waiver under amended Trial Rule 35 (B) (2) is the request and obtaining of the examination report by the party examined or by his taking the deposition of the examining physician.

At first blush it might appear that an adoption of the Appellate Court holding would emasculate amended Trial Rule 35 (B) (2) for all intents and purposes. It is for this reason that we have decided to dispose of this case by transfer, for in our opinion a finding of waiver as previously outlined can be reconciled with the amended rule.

While it is true that Trial Rule 35 (B) (2) might be interpreted as the selection of an event, the happening of which is *necessary* to find a waiver of the privilege in respect to the mental or physical condition put in issue, we feel that it would be unwise to so construe the rule so as to preclude an independent finding of an implied waiver on all matters causally or historically related to the mental or physical condition *put in issue by the party-patient* by way of claim, counterclaim or affirmative defense. If we are to give any credence to what we have previously articulated in this opinion, it is manifestly clear that such a construction would perpetuate unwarranted suppression of evidence for no logical reason. Were a party-patient's request for the examination report or the taking of the examining physician's deposition the only event which would occasion a waiver of the privilege, an option would remain open to the party possessing the privilege. Notwithstanding the fact that he has placed a mental or physical condition in issue, and notwithstanding the fact that this act will ultimately result in a revealing of information otherwise protected from exposure by the privilege, the party so placing the issue before the eyes of the world may preserve the privilege by merely refraining from doing those acts designated by the rule. Further and most surely, it is in those cases where a recognition of the privilege would be most inequitable that the party presenting the issue would so refrain. The case

at bar, although not conducted pursuant to our new rules of civil procedure, illustrates the point.

Serious questions were here raised as to the truth of certain representations made by plaintiff respecting a pre-existing condition related to the injury for which he now seeks recovery. Due to a recognition of the privilege, however, the defendant was unable to challenge plaintiff's claim in this respect by calling a physician (a chiropractor) who had apparently treated him on prior occasions for the condition. In such circumstances, it is virtually impossible to conceive of any legitimate reason for denying the defendant an opportunity to present and develop relevant evidence pertaining to the veracity of plaintiff's claim on which the defendant is sought to be held responsible. The whole world is now aware of the physical condition; certainly considerations which have persuaded the courts and legislatures to recognize a physician-patient privilege no longer demand or equitably permit its continued observance insofar as it applies to the condition voluntarily put in issue. To do so is to "stack the deck" in the party-patient's favor and allow him to misrepresent the precise origin of the injury with impunity.

Nor would justice have been adequately served had amended Trial Rule 35(B)(2) been available. Plaintiff had ample expert testimony of his own to offer in proof of his claim. Had the defendant sought examination of the plaintiff pursuant to Trial Rule 35(A), there is little reason to suspect that the plaintiff would have sought a copy of the examination report or to depose the examining physician, being aware as he obviously would of the consequent waiver of the privilege. By his so opting, any evidence relating to misrepresentations made respecting the true origin of his condition would remain essentially undiscoverable and inadmissible at trial. Having discussed the nature of the policy upon which the privilege is premised, we fail to see the wisdom or justice in allowing such an option to remain open to the party-patient once *he* has voluntarily put the condition in issue. The resulting suppression of evidence no longer retains legal respectability.

The fact that a waiver of the physician-patient privilege as to all matters causally or historically related to the condition the party-patient has put in issue by way of claim, counterclaim or affirmative defense occurs at the time of filing should not be unduly alarming since under our new rules of civil procedure such a waiver will have no consequence until discovery of matters relating to the condition is sought. By putting the condition in issue, discovery is made possible by virtue of Trial Rule 26(B), the matter no longer being privileged.[2] If discovery is thus in fact attempted and the party-patient from whom discovery is sought considers the inquiry a mere "fishing expedition" into matters unrelated either causally or historically and therefore irrelevant to the condition he has put in issue, he may seek a protective order from the court pursuant to Trial Rule 26(C).[3] Responsibility would then devolve upon the trial court, in an exercise of its sound judicial discretion, to determine the extent, if at all,

---

2. "(B) Scope of discovery. Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows:

(1) In general. Parties may obtain discovery regarding any matter, *not privileged*, . . ." Rule T.R. 26(B).

3. "(C) Protective orders. Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the country where the deposition is being taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) that the discovery not be had;

(2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters;

(5) that discovery be conducted with no one present except the parties and their attorneys and persons designated by the court;

(6) that a deposition after being sealed be opened only by order of the court;

(7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;

(8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery." Rule T.R. 26(C).

that discovery is to be had.  In making its determination, the trial court should not lightly consider a party-patient's right to invoke the physician-patient privilege as to any matters which do not appear to be *causally or historically* related to the condition he has put in issue.  Lest the physician-patient privilege become nothing more than a legal anachronism, it would seem apparent that the privilege is waived only to those matters causally and historically related to the condition put in issue *and which have a direct medical relevance to the claim, counterclaim or defense made.*  If it be shown that there is nothing more than some casual link having no direct medical bearing on the legitimacy of the claim or defense tendered between the condition in issue and the condition on which discovery is sought, the trial court should properly issue a protective order.  By so limiting the scope of discoverable matters, the confidential relationship of physician-patient is preserved in all respects except in those areas where the party, by his very conduct, has disclosed information which itself limitedly removes the veil of privacy.

To briefly summarize, we hold that a party-patient impliedly waives his physician-patient privilege as to all matters either causally or historically related to the condition he has voluntarily put in issue by way of claim, counterclaim or affirmative defense, and which have a direct medical relevance to the legitimacy of such claim or defense.[4]  We are now left only with the task of distinguishing the waiver just described from that provided for by amended Trial Rule 35 (B) (2).

Amended Trial Rule 35 (A) provides in pertinent part as follows:

> "When the mental or physical condition . . . of a party, or of a person in the custody or under the legal control of a party, *is in controversy,* the court in which the action

---

4.  We concede that it may be a legal fiction to say that a party has "voluntarily" placed a condition in issue by way of counterclaim or affirmative defense.  In the case of a counterclaim, there are many situations where the filing of such is made compulsory under Trial Rule 13.  Likewise, one could hardly say that a party "voluntarily" places a condition in issue when defending a claim instituted against him.  Nevertheless, the publication of the communications by that party removes the basis for a continued recognition of the privilege.

is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown ..." (our emphasis)

Clearly, there may be a situation in which the physical or mental condition of a party-patient *is in controversy* notwithstanding the fact that it was not placed in issue *by that party*. Where *an opposing* party raises a question as to the mental or physical condition of the party-patient it is clear that he cannot by so doing waive the party-patient's physician-patient privilege, it being personal to the patient. It would therefore seem obvious that a situation could exist wherein a party would be entitled to have the party-patient examined under Trial Rule 35 notwithstanding the fact that the party to be examined has in no way personally placed the condition in issue. Under such circumstances, Trial Rule 35(B)(2) stipulates that the party-patient examined waives his privilege, *as to that condition,* only upon request of the examination report or by taking the deposition of the examining physician.[5]

By interpreting amended Trial Rule 35(B)(2) to apply in such a situation, while at the same time independently implying a waiver by a party who voluntarily places any mental or physical condition in issue by way of claim, counterclaim or affirmative defense, we import a reasonable construction to the rule while at the same time recognizing that a party's conduct may constitute a waiver independently of the rule. In light of the policy behind the physician-patient

---

5. One situation where Trial Rule 35(B)(2) would become operative is where a party-patient seeks recovery for a mental or physical condition resulting from the defendant's alleged negligence and the defendant asserts contributory negligence on the part of the party-patient based on some unrelated and pre-existing condition *had by the party-patient* which rendered his conduct in sustaining the injury contributorily negligent. If the defendant seeks and obtains an examination of the party-patient under Trial Rule 35(A), *as to that unrelated condition,* it being in controversy, the party-patient waives his physician-patient privilege as to that unrelated condition only upon request for a copy of the examining physician's report or by the taking of the examining physician's deposition.

privilege, we feel justice will be served and the physician-patient privilege preserved within reasonable boundaries.

For the foregoing reasons, we grant transfer of this cause; the trial court's judgment is reversed and this cause is remanded with instructions to grant defendant-appellant's motion for new trial, proceedings on retrial to be consistent with this opinion.

Judgment reversed.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 268 N. E. 2d 95.