**Jack N. ANDERSON, Plaintiff,**

v.

**Richard M. NIXON et al., Defendants.**

**Civ. A. No. 76–1794.**

United States District Court, District of Columbia.

Jan. 26, 1978.

---

**3.** 78 U.S.App.D.C. 93, 137 F.2d 687 (1943).

**4.** 48 App.D.C. 44 (1918).

William A. Dobrovir, Washington, D. C., for plaintiff.

Herbert J. Miller, Jr., R. Stan Mortenson, Miller, Cassidy, Larroca & Lewin, Washington, D. C., for Richard M. Nixon.

Robert J. Franzinger, Dept. of Justice, Washington, D. C., for Kissinger, Helms, Colson, Kleindienst, Gray, Dean, Mardian, Krogh, Young.

Plato Cacheris, Cary Mark Feldman, Hundley & Cacheris, Washington, D. C., for Mitchell.

Frank H. Strickler, Whiteford, Hart, Carmody & Wilson, Washington, D. C., for Haldeman.

Lawrence Schwartz, Stiller, Adler & Schwartz, Washington, D. C., for Ehrlichman.

Robert T. Murphy, Charles A. McNelis, Welch & Morgan, Washington, D. C., for Kalmbach.

F. Wainwright Barnes, Brault, Graham, Scott & Brault, Washington, D. C., for Ulasewicz.

William A. Snyder, Jr., Thomas W. Coons, Ober, Grimes & Shriver, Baltimore, Md., for Hunt.

G. Gordon Liddy, pro se,.

## MEMORANDUM AND ORDER

GESELL, District Judge.

In this civil action plaintiff, a widely syndicated columnist, has sued for substantial damages nineteen individuals [1] identified in the recent Watergate disclosures, alleging a conspiracy to deprive him of his rights as a journalist under the First, Fourth, and Ninth Amendments to the Constitution. In the course of his pretrial deposition plaintiff refused to disclose the names of certain sources who supplied him with information relating to particular overt acts alleged. Defendants then joined in motions to compel, requesting sanctions under Rule 37 of the Federal Rules of Civil Procedure. The motions were fully briefed and argued. Since the issues raised are somewhat novel and may prove decisive in the litigation, the procedural context in which the motions arise will first be explicated.

The complaint was originally filed in September 1976, requesting a jury trial. In its present form it alleges a conspiracy beginning in 1969 and operating until sometime in 1974 by former high officials and their associates to harass plaintiff because of his writings. As a result of this conspiracy, plaintiff claims, his ability to gather and report news was injured by the reluctance of sources to provide information. Various overt acts are alleged, all of which plaintiff was aware. It is asserted, however, that defendants "intentionally and fraudulently concealed" the conspiracy itself and that "plaintiff did not discover and with due diligence could not have discovered the existence of said conspiracy prior to February 19, 1974."

In due course motions to dismiss were filed by the individual defendants.[2] A prominent feature of these motions is the contention that the action is barred by the three-year statute of limitations. All overt acts save one (an audit of plaintiff's tax returns which by discovery was shown conclusively to have been purely a random audit based on plaintiff's social security number and other objective factors) occurred over three years prior to suit, and plaintiff's column indicated considerable early knowledge of what he now alleges was concealed. Thus the issue of fraudulent concealment has been brought into sharp focus in the context of the statute of limitations defense.

At plaintiff's suggestion the motions to dismiss were held in abeyance to allow for discovery. After it developed that plaintiff's interrogatories to defendants were unsatisfactory, the Court directed that discovery be by deposition. Plaintiff completed a number of depositions, and more are scheduled. By agreement, plaintiff's deposition was scheduled to be completed before those of several principals, including former President Nixon and Mr. H. R. Haldeman. During his deposition plaintiff stated in response to specific questions that he was unwilling to reveal the names of certain sources, i. e., individuals from whom he had received information about one or more overt acts during the period in which plaintiff contends the conspiracy, although unknown to him, was taking place. The deposition was adjourned midstream and defendants moved to compel.

The nature of the inquiries and refusals are set out in defendant Nixon's motion to compel answers and are supported by the transcript of plaintiff's deposition on file in this case. Only two refusals are presently of concern to the court: [3]

1. Richard M. Nixon, Henry A. Kissinger (individually), Richard M. Helms, John N. Mitchell, H. R. Haldeman, John D. Ehrlichman, Charles W. Colson, Richard G. Kleindienst, L. Patrick Gray, John W. Dean, III, Robert C. Mardian, Jeb Stuart Magruder, Herbert W. Kalmbach, Egil Krogh, Jr., David R. Young, Jr., Anthony T. Ulasewicz, E. Howard Hunt, G. Gordon Liddy, James W. McCord, Jr.

2. The agency defendants Griffin B. Bell (Department of Justice), Clarence M. Kelley (FBI), Stansfield Turner (CIA), and Jerome Kurtz (Internal Revenue Service) were dismissed on July 18, 1977, thus terminating the injunctive aspect of the litigation.

3. In the case of another refusal plaintiff is now prepared to reveal his source. Another inquiry involving plaintiff's sources in CIA was lacking in sufficient specificity to be clearly relevant to the present controversy.

(1) Paragraph 6 of the complaint alleges that defendants Nixon, Haldeman, and Ehrlichman hired defendant Ulasewicz and John Caulfield, a former defendant, to conduct an investigation of plaintiff on at least three occasions and that these investigations involved illegal wiretapping and unlawful entries. Seeking to probe plaintiff's information supporting this allegation and to develop the full extent of his knowledge, a highly relevant inquiry, plaintiff was asked to name sources. Plaintiff refused on First Amendment grounds to give the name of one of his sources on Mr. Haldeman's staff who had supplied him with highly pertinent information. Plaintiff's recollection as to details of his conversation with the source was incomplete.

(2) Paragraph 10 of the complaint alleges that a Special Investigation Unit known as "the Plumbers," of which several defendants were allegedly members, was ordered by other defendants to investigate plaintiff and others concerning plaintiff's article indicating the Nixon Administration's support of Pakistan. In the course of this investigation, the complaint alleges, defendants placed illegal electronic surveillance on plaintiff, a Navy enlisted man named Radford, and others. When questioned, plaintiff stated repeatedly that he would not discuss in any way "the source of the India-Pakistan leak," whether he questioned Radford about his activities, or the source of any information he "might have gotten in connection with it." Plaintiff stated, "I made an agreement not to, and I will keep that agreement."

These two inquiries lie at the heart of the lawsuit. The first concerns basic instructions by a major defendant to implement an investigation of plaintiff. The second involves a breach of security suspected in the "tilt" toward Pakistan incident which plaintiff has investigated at length in his depositions and which raises directly the question whether surveillance of plaintiff, if any, was to squelch his journalism or to ferret out a security leak. Development of plaintiff's information in these areas is vital before principals on the West Coast are deposed. It relates both to the merits as well as damages and is equally vital to a determination whether or not in fact the conspiracy was fraudulently concealed so as to toll the statute of limitations.

Plaintiff makes two basic contentions in support of his position. *First,* he claims his newsman's privilege, as guaranteed by the First Amendment and other provisions of the Constitution entitles him to protect his sources at least until all possible alternative means for ascertaining his sources have been exhausted and shown to be unproductive. *Second,* he urges that the information, even if relevant, will not be necessary because plaintiff himself is prevented from using it by reason of his claim of privilege and that in effect only plaintiff will suffer.

Defendants assert their right to develop facts that will enable them to establish their affirmative statute of limitations defense and to defend, if necessary, on the merits. The inquiry will provide leads and may benefit the interests of particular defendants over others, since involvement varies substantially. They contend that plaintiff has waived his personal privilege to withhold sources by bringing this action and that the necessities of the case as a matter of law justify breaching plaintiff's qualified privilege.

■■■ In this case of first impression, inquiry starts with certain well-established premises. "Official harassment of the press undertaken not for the purposes of law enforcement but to disrupt a reporter's relationship with his news sources" has no justification. *Branzburg v. Hayes,* 408 U.S. 665, 707, 92 S.Ct. 2646, 2670, 33 L.Ed.2d 626 (1972). The newsman's privilege is a "fundamental personal right" well founded in the First Amendment. *Lovell v. Griffin,* 303 U.S. 444, 450, 58 S.Ct. 666, 82 L.Ed. 949 (1938). Although the public interest in a fully informed press provides its basis, the privilege "is that of the reporter not the informant" or the public, as plaintiff claims. *Branzburg v. Hayes,* 408 U.S. at 695, 92

S.Ct. at 2664. Generally speaking, the privilege protects the newsman from disclosing sources. But the privilege is a qualified one: where sources have relevant information that the interests of justice require be disclosed, and the need is compelling, an obligation may be placed on the newsman to reveal sources in spite of an implied or actual prior pledge of confidentiality. *See id.*; *Carey v. Hume,* 160 U.S.App.D.C. 365, 492 F.2d 631, *cert. dismissed,* 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974). This is such a case.

█ Here the newsman is not being obliged to disclose his sources. Plaintiff's pledge of confidentiality would have remained unchallenged had he not invoked the aid of the Court seeking compensatory and punitive damages based on his claim of conspiracy. Plaintiff is attempting to use the First Amendment simultaneously as a sword and a shield. He believes he was wronged by a conspiracy that sought to retaliate against his sources and to undermine his reliability and professional standing before the public because what he said was unpopular with the conspirators. But when those he accuses seek to defend by attempting to discover who his sources were, so that they may find out what the sources knew, their version of what they told him, and how they were hurt, plaintiff says this is off limits—a forbidden area of inquiry. He cannot have it both ways. Plaintiff is not a bystander in the process but a principal. He cannot ask for justice and deny it to those he accuses.

Plaintiff suggests that discovery can proceed without naming sources, that he need only say what the sources told him. This is too simplistic. Plaintiff's version of what he was told must be tested against the recollection of others with knowledge of the disclosure, including the source itself. Moreover, in some respects plaintiff acknowledges his own memory is fuzzy or

incomplete. The sources are presumably persons with firsthand knowledge, otherwise plaintiff would not have given them credence in his column. They have highly relevant data, not all of which was necessarily relayed to plaintiff, that must be tested through the accepted adversary process. If not, defendants lose critically significant rights.

█ The qualified privilege of the newsman is a fragile one. In those reported cases in which the newsman was a defendant, the privilege has not been upheld. *Compare id.* (disclosure required) *and Dow Jones & Co. v. Superior Court,* 364 Mass. 317, 303 N.E.2d 847 (1973) (same) *with Democratic National Committee v. McCord,* 356 F.Supp. 1394, 1397 (D.D.C.1973) (in upholding privilege, court stressed that claimants were not parties). Plaintiff nonetheless cites *Branzburg* and similar cases as requiring the Court to engage in a "balancing test" to determine whether the privilege should be recognized and whether the party opposing the privilege must first exhaust "other available sources of information," *Baker v. F & F Investment,* 470 F.2d 778, 783 (2nd Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973). Where, as here, it is the newsman himself who has provoked the legal controversy about which his confidential sources may have relevant information, any "balancing" seems most unrealistic. Having chosen to become a litigant, the newsman is not exempt from those obligations imposed by the rule of law on all litigants in the federal courts. As a litigant he has a duty to conform to the rules of procedure. The public interest in fair and impartial administration of justice demand nothing less.[4] Indeed, there is strong precedent in analogous situations suggesting that in initiating and maintaining a lawsuit such as the one in this case the newsman waives his qualified privilege of silence where his sources

---

4. In any event, the extensive discovery to date and the very nature of the case make it apparent that it would be wasteful and wholly nonproductive to require defendants to search at random for plaintiff's sources in pursuit of their legitimate effort to ascertain what infor-

mation plaintiff knew during the period before 1974 and how sources were intimidated or injured. This "wide-ranging and onerous discovery burden," *Carey v. Hume,* 160 U.S.App. D.C. at 373, 492 F.2d at 639, will not be imposed.

have information that goes to the heart of the defense.

 The analogies are obvious: a client waives his attorney privilege when he brings suit or raises an affirmative defense that makes his intent and knowledge of the law relevant. *See, e. g., Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash.1975). A plaintiff may not assert a Fifth Amendment privilege to block discovery necessary to the defense. *See also Lyons v. Johnson,* 415 F.2d 540 (9th Cir. 1969), *cert. denied,* 397 U.S. 1027, 90 S.Ct. 1273, 25 L.Ed.2d 538 (1970); *Independent Productions Corp. v. Loew's, Inc.,* 22 F.R.D. 266 (S.D.N.Y.1958). The cases dealing with the informer's privilege, however, provide the clearest comparison. Like the newsman's privilege, the informer's privilege also "exists for the benefit of the general public," *Westinghouse Electric Corp. v. City of Burlington,* 122 U.S.App.D.C. 65, 71, 351 F.2d 762, 768 (1965), and similarly only the recipient of the information—the Government—can claim the privilege. *See Branzburg v. Hayes,* 408 U.S. at 698, 92 S.Ct. 2646. In *Roviaro v. United States,* 353 U.S. 53, 60– 61, 65 n. 15, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957), the Court held that following initiation of formal criminal proceedings, "[w]here the disclosure of an informer's identity . . . [would be] relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way," and disclosure can be compelled even before trial.[5] Such a rule is necessary because "it is unconscionable to allow [the Government] to undertake prosecution and then invoke its . . . privileges to deprive the accused of anything which might be material to his defense." *United States v. Reynolds,* 345 U.S. 1, 12, 73 S.Ct. 528, 534, 97 L.Ed. 727 (1954). The Court has found no persuasive reason why the reasoning of *Roviaro* should

not be carried forward here. Indeed, this is an *a fortiori* case, particularly since the plaintiff-newsman sues primarily to vindicate his own, rather than public rights. Any contrary rule upholding the privilege in this instance would provide a vast and unfair litigation advantage to the newsman-plaintiff, who could preserve inviolate information obviously relevant to an adequate defense of the lawsuit he has precipitated. Where the interests of a newsman in preserving the anonymity of his sources clash with his responsibilities as a plaintiff, and where the information sought to be protected goes to the heart of the defense, the privilege must give way.

Plaintiff stated in open court that the two instances underlying these motions are representative of what will ensue if the deposition proceeds. There are other overt acts to be explained, and plaintiff's columns reflect prior knowledge of them in varying degrees. If plaintiff's continued refusal to disclose sources persists, defendants will be frustrated both in their effort to meet their full burden on the affirmative statute of limitations defense and in preparing adequately for trial before the jury on the merits. In seeking the identity of some of plaintiff's sources, defendants are acting in good faith. They have restricted inquiries to specific overt acts alleged in the complaint. The information sought in the two instances under review lies at the heart of the case, cannot be otherwise obtained, and is essential to the fair determination of the cause. It is relevant and vital.

Answers will be compelled and the motions are granted as to the two specific inquiries mentioned above. Rule 37 of the Federal Rules of Civil Procedure contemplates a two-step process: a court order directing deponent to answer and then the subsequent imposition of sanctions if the order is not obeyed. Under the circum-

---

5. In a variant case, the United States Court of Appeals for the District of Columbia Circuit has held that in a case in which the source has filed suit, the Government may not resist a third-party subpoena on the grounds of informer privilege. By filing suit, the Court found, the sources "should be regarded as having waived

the informer's privilege as to their communications with the Government relating to alleged offenses underlying their treble-damage action." *Westinghouse Elec. Corp. v. City of Burlington,* 122 U.S.App.D.C. 65, 73, 351 F.2d 762, 770 (1965).

stances, the Court deems it appropriate when directing plaintiff to respond also to indicate the nature of the sanction that presently appears appropriate so that plaintiff shall be fully on notice of the implications of any further refusal to answer, a course the plaintiff has already intimated he will be obliged to take as a matter of principle. The Court will not force disclosure of sources. The choice is plaintiff's. If he declines to answer, the Court will entertain a motion under Rule 37(b) for default.

Therefore, in accordance with the foregoing it is hereby

ORDERED that defendants' motions to compel answers are granted in part and denied in part, and it is further

ORDERED that movants shall not be awarded any expenses incurred in relation to the motions.