**Theodore DRISCOLL**

v.

**Joanna Carole MORRIS.**

**Civ. No. H–84–947(AHN).**

United States District Court,
D. Connecticut.

Aug. 6, 1986.

**460**

Peter G. Perakos, II, Perakos, Coe, Zitser, Crown & Kindl, Hartford, Conn., for plaintiff.

Robert W. Allen, Derby, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION TO COMPEL DEPOSITION TESTIMONY

NEVAS, District Judge.

In this diversity action, Theodore Driscoll, a Hartford Courant reporter, seeks damages from Joanna Carole Morris for defamation as well as for intentional and negligent infliction of emotional distress caused by the defendant's allegedly defamatory statements and writings. As an element of damages, the plaintiff claims that the defendant's wrongful conduct affected his relationship with and his ability to utilize past, present and future confidential sources which in turn has had a negative impact on his ability to function as an investigative reporter. The defendant made the instant motion under Rule 37, Fed.R. Civ.P., to compel discovery of the plaintiff's confidential sources after the plaintiff, invoking a first amendment reporter's privilege, failed to respond to the defendant's questions at deposition. For the following reasons, the defendant's motion to compel is granted.

■ Rule 26(b)(1), Fed.R.Civ.P., authorizes discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action". Since the plaintiff's alleged damages include the adverse effect of the defendant's statements on the plaintiff's relationships with his sources, the defendant's inquiry in this area is relevant. In order to successfully oppose the defendant's motion, the plaintiff must therefore establish (1) the existence of a reporter's privilege based on the freedom of the press provision of the First Amendment to the United States Constitution; and, (2) that the privilege is applicable to the facts of this case.

■ The Supreme Court has not expressly ruled on the existence of a reporter's privilege in civil cases. The Court has held that the privilege did not apply to a reporter's testimony before a criminal grand jury, *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972),[1] or to the discovery of the mental and editorial processes of a reporter who is the defendant in a libel suit, *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), and has admonished that evidentiary privileges should be narrowly construed "for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

The Second Circuit, however, recognizes a qualified privilege[2] which prevents a reporter, whether or not a party in a civil action, from claiming the privilege to protect his confidential sources only when the information sought is (1) highly material and relevant, (2) necessary or critical to the maintenance of the claim, and (3) not obtainable from other available sources. *In re Petroleum Products Antitrust Litigation,* 680 F.2d 5, 7 (2d Cir.), *cert. denied,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982). *See United States v. Burke,* 700 F.2d 70, 76–77 (2d Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *Baker v. F & F Investments,* 470 F.2d 778, 783 (2d Cir.1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973); *Garland v. Torre,* 259 F.2d 545, 548 (2d Cir.), *cert. denied,* 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958). The availability of the privilege[3] thus turns on a balancing of the importance to the public of the free

---

**1.** However, Justice Powell, in his concurring opinion, recognized a qualified privilege subject to a balancing test. *Branzberg,* 408 U.S. at 710, 92 S.Ct. at 2671.

**2.** In *United States v. Burke,* Judge Meskill extended the qualified reporter's first amendment privilege to criminal cases as well. 700 F.2d at 77.

**3.** Other circuits have followed the Second Circuit's approach. *Zerilli v. Smith,* 656 F.2d 705, 712–13 (D.C.Cir.1981); *Riley v. City of Chester,* 612 F.2d 708, 715–16 (3d Cir.1976); *Silkwood v. Kerr-McGee Corp.,* 563 F.2d 433, 436–38 (10th Cir.1978); *Cervantes v. Time, Inc.,* 464 F.2d 986, 992 (8th Cir.1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973); *Miller v. Transamerican Press, Inc.,* 621 F.2d 721, 725

flow of information, which would be impaired by the disclosure of a reporter's confidential sources,[4] against the duty of a witness to testify in "courts of justice, armed with the power to discover truth." *Garland v. Torre*, 259 F.2d at 548. In addition, the compelled information must go to "the heart of the plaintiff's claim." *Id.* at 550. In the only two reported Connecticut cases where a reporter invoked a first amendment privilege, the Connecticut courts followed the Second Circuit's recognition of a qualified privilege. *Goldfarb v. Post Publishing Co.*, 4 Media L.Rep. (BNA) 1167 (Conn.Super.Ct.1978); *Connecticut State Board of Labor Relations v. Fagin*, 33 Conn.Supp. 204, 370 A.2d 1095 (1976).

Neither the Connecticut courts nor the Second Circuit has as yet addressed the issue of whether a reporter who invokes the court's power for personal relief, thereby putting the identity of his sources at issue, waives his first amendment privilege.[5] In *Baker, Burke* and *Petroleum Products*, the reporters were involved as non-party witnesses [6] while in *Garland* the reporter was the defendant [7] in a libel suit.[8] In the instant case the reporter asserting the privilege against disclosure of confidential sources is not merely a non-party witness or a defendant in a libel suit but is the party who initiated the lawsuit. The issue thus raised is whether a reporter who places at issue the impairment of his ability

(5th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981). See *Andrews v. Eli Lilly & Co.,* 97 F.R.D. 494, 501 (N.D.Ill. 1983) for a comprehensive list of courts recognizing a qualified reporter's privilege.

**4.** "Unless potential sources are confident that compelled disclosure is unlikely, they will be reluctant to disclose any confidential information to reporters." *Zerilli v. Smith,* 656 F.2d at 712. A similar argument relating to executive privilege was made in *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

**5.** The court acknowledges that in diversity actions, Rule 501, Fed.R.Evid., provides that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law." Accordingly, were there a recognized reporter's privilege in Connecticut, this court's inquiry would be directed to whether the privilege applies to the facts of this case. *See generally* J. Moore, J. Lucas, G. Grotheer, 4 *Moore's Federal Practice,* para. 26.60 [7] (2d ed. 1984). *See also Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551, 555 n. 2 (2d Cir.1967); *Massachusetts Mut.Life Ins. Co. v. Brei,* 311 F.2d 463, 465–66 (2d Cir.1962).

**6.** In *Continental Cablevision, Inc. v. Storer Broadcasting Co.,* 583 F.Supp. 427, 433 (E.D.Mo. 1984), the court observed: "It is easier for a party seeking to overcome the privilege to do so in a criminal trial or grand jury situation, or in a civil libel case where there is a media defendant, than in a civil case where the reporter is a non-party. This is because the paramount public interest in the maintenance of a vigorous, aggressive and independent press is more likely to outweigh the duty to testify and the private interests in civil litigation where the reporter is a non-party." (citations omitted). *See* Note, *Grand Jury Subpoenas and the Threat to Free Speech: In re Grand Jury Matter (Gronowicz),* 18 Conn.L.Rev. 665, 670 (1986).

**7.** As one commentator observed: "A narrower application of the privilege, however, is appropriate in libel cases in order not to frustrate the policy of denying first amendment protection to libelous reports. Allowing defendant journalists to protect their sources (or their lack of sources) from judicial scrutiny simply by asserting that they based their stories on information from a reliable confidential source would undermine the role of libel liability as a check against media abuses." Note, *Developments in the Law: Privileged Communications,* 98 Harv. L.Rev. 1450, 1608 (1985).

**8.** A similar pattern is observable in cases in other circuits. *E.g., Zerilli v. Smith,* 656 F.2d 705 (D.C.Cir.1981) (non-party reporter's first amendment interest upheld against disclosure); *Silkwood v. Kerr-McGee Corp.,* 563 F.2d 433 (10th Cir.1977) (decision ordering disclosure of non-party reporter's confidential sources reversed and remanded for weighing test); *Cervantes v. Time, Inc.,* 464 F.2d 986 (8th Cir.1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973) (defendant reporter's privilege upheld in libel suit where action is patently without merit); *Schultz v. Reader's Digest Ass'n.,* 468 F.Supp. 551, 566 (E.D.Mich.1979) (disclosure of defendant reporter's sources not compelled in libel suit where information was unnecessary to determination of malice); *Carey v. Hume,* 492 F.2d 631 (D.C.Cir.), *cert. dismissed,* 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974) (disclosure compelled in libel suit of defendant reporter's source of information on which the alleged libel was based).

to use confidential sources waives the privilege of keeping these sources confidential.

This issue has been decided in *Anderson v. Nixon*, 444 F.Supp. 1195 (D.D.C.1978), which held that "[w]here the interests of a newsman in preserving the anonymity of his sources clash with his responsibilities as a plaintiff, and where the information sought to be protected goes to the heart of the defense, the privilege must give way." *Id.* at 1200.[9] The court reasoned that a plaintiff reporter allowed to "preserve inviolate information obviously relevant to an adequate defense of the suit he has precipitated" would have "a vast and unfair litigation advantage." *Id.* at 1200. The plaintiff reporter could not abuse his privilege by employing it as a sword and a shield:

> Plaintiff is attempting to use the First Amendment simultaneously as a sword and a shield. He believes he was wronged by a conspiracy that sought to retaliate against his sources and to undermine his reliability and professional standing before the public.... But when those he accuses seek to defend by attempting to discover who his sources were, ... plaintiff says this is off limits—a forbidden area of inquiry. He cannot have it both ways. Plaintiff is not a bystander in the process but a principal. He cannot ask for justice and deny it to those he accuses.

*Anderson v. Nixon*, 444 F.Supp. at 1199. The court observed that, in the case of a plaintiff reporter, a balancing test was "unrealistic" probably because, as one commentator suggests, "as a practical matter, a newsman plaintiff's sources will almost always be relevant, a subject of compelling need, and unavailable through alternative sources." Eckhardt and McKey, *Reporter's Privilege: An Update*, 12 Conn.L.Rev. 435, 459 (1980).

*Anderson v. Nixon* was followed in *Campus Communications, Inc. v. Freedman*, 374 So.2d 1169 (Fla.App.1979), where a plaintiff student newspaper sought compensatory and punitive damages for the alleged theft of its election day issue. The defendants' identity had been revealed to the plaintiff by a reporter's confidential source. When the defendants filed interrogatories asking the plaintiff to name the eyewitnesses to the theft, the plaintiff asserted a first amendment privilege, refusing to reveal "a confidential source who cannot be named at this time due to privilege of confidentiality for newsmen's sources." *Id.* at 1170. The court, citing *Anderson*, held that the privilege did not apply to a plaintiff who initiates suit. The court noted that the defendants sought only to discover the identity of the reporter eyewitness "for a lawsuit against them in which they are potentially liable." *Id.* at 1171. As in *Anderson*, the court found the privilege waived because the information sought was vital to the defense.

The facts of *Anderson v. Nixon* are similar to those of the instant case. The plaintiff alleges that the defendant falsely informed his employer, other newspapers in Connecticut, and the Governor that he illegally obtained grand jury information from a confidential source (Complaint, para. 17). The plaintiff also claims that the defendant's oral statements and writings

---

**9.** In *Anderson v. Nixon*, 444 F.Supp. at 1195, columnist Jack Anderson had initiated a civil suit against Richard Nixon (and eighteen other "Watergate" defendants) for a conspiracy to deprive him of his rights under the first, fourth, and ninth amendments, which, as a result, impaired his ability to use his confidential sources. Anderson alleged that the defendants had conspired "to harass plaintiff because of his writings," employing "illegal wiretapping and unlawful entries." *Id.* at 1197–98. In his pretrial deposition, however, Anderson refused to reveal the identity of the sources who had provided information about the acts alleged, information which the court found "relevant and vital" and "at the heart of the case". *Id.* at 1200. In addition, Anderson claimed that the defendants had fraudulently concealed the conspiracy, causing the statute of limitations to toll. Anderson's refusal to reveal his sources thus blocked the defendants' affirmative statute of limitations defense. *Id.* at 1197–98. The defendants, claiming a right "to develop facts ... to defend", contended that the plaintiff had waived his privilege by initiating the lawsuit. *Id.* at 1198. *See generally*, Comment, *Newsperson's First Amendment Privilege Inapplicable Where Plaintiff Newsman Has Information Vital To Defense of Action*, 10 Rut.-Cam. 199, 199 nn. 1 & 4 (1978).

harmed his reputation "at work" (Complaint, para 9) and chilled his confidential sources. The defendant seeks the identity of the confidential sources in order to ascertain the extent of the plaintiff's alleged damages from the loss or impairment of his confidential sources. In addition, the defendant claims the identity of the confidential sources is vital to her affirmative defense of truth.

Thus, the plaintiff, by asserting a privilege against disclosure, is attempting to use the shield of privilege as a sword to undermine the defendant's preparation of her defense. The information sought by the defendant is not merely relevant but goes to the heart of the defense. By claiming that the defendant's wrongful conduct affected his relationship with and his ability to utilize past, present, and future confidential sources, which in turn has had a negative impact on his ability to function as an investigative reporter, the plaintiff has placed at issue the identity of his sources. By so doing, he has waived the privilege against disclosure.

This conclusion is supported by analogous Second Circuit cases holding that a plaintiff in a civil action cannot use his fifth amendment privileges against self-incrimination as both a sword and a shield.[10] *Independent Productions Corp. v. Loews, Inc.,* 22 F.R.D. 266 (S.D.N.Y.1958); *Sindona v. Tisch,* 27 Fed.R.Serv.2d (Callaghan) 404 (S.D.N.Y.1979), *aff'd mem.,* 610 F.2d 807 (2d Cir.), *cert. denied,* 446 U.S. 909, 100 S.Ct. 1837, 64 L.Ed.2d 262 (1980). The reasoning in the cases which deny the testimonial privilege to plaintiffs in civil actions is based on the policy of preventing unfairness to the defendant. "It would be uneven justice to permit plaintiffs to invoke the powers of this court for the purpose of seeking redress and, at the same time, to permit plaintiffs to fend off questions, the answers to which may constitute a valid defense or materially aid the defense." *Loews,* 22 F.R.D. at 276.

The Connecticut Supreme Court applied a waiver analysis in *Pavlinko v. Yale-New Haven Hospital,* 192 Conn. 138, 470 A.2d 246 (1984), holding that a plaintiff cannot assert his fifth amendment privilege against self-incrimination "as a sword to deny others information which is rightfully theirs. A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing on his right to maintain his action." *Id.* at 146–47. Thus, as in *Anderson v. Nixon,* the Connecticut court conditioned the waiver of the plaintiff's privilege on whether the information sought went to the heart of the claim.

The sword and shield analysis is not only confined to the fifth amendment privilege against self-incrimination. It has also been applied to cases involving other privileges where the party asserting the privilege, whether a plaintiff bringing suit or a defendant pleading an affirmative defense, attempts to block the discovery of informa-

---

**10.** Some courts have similarly applied a waiver approach and have held that a plaintiff cannot use a fifth amendment privilege as both a sword and a shield. *E.g., Lyons v. Johnson,* 415 F.2d 540 (9th Cir.1969), *cert. denied,* 397 U.S. 1027, 90 S.Ct. 1273, 25 L.Ed.2d 538 (1970); *Bramble v. Kleindeinst,* 357 F.Supp. 1028, 1035–36 (D.Colo. 1973), *aff'd sub nom. Bramble v. Richardson,* 498 F.2d 968 (10th Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *Kisting v. Westchester Fire Ins. Co.,* 290 F.Supp. 141, 149–50 (W.D.Wis.1968), *aff'd,* 416 F.2d 967 (7th Cir.1969); *Franklin v. Franklin,* 365 Mo. 442, 283 S.W.2d 483 (1955); *Levine v. Bornstein,* 13 Misc.2d 161, 174 N.Y.S.2d 574 (Sup.Ct.1958), *aff'd,* 7 A.D.2d 995, 183 N.Y.S.2d 868 (1959); *Laverne v. Incorporated Village of Laurel Hollow,* 18 N.Y.2d 635, 272 N.Y.S.2d 780, 219 N.E.2d 294 (1966), *appeal dismissed,* 386 U.S. 682, 87 S.Ct. 1324, 18 L.Ed.2d 403 (1967). *See* J. Moore, J. Lucas, G. Grotheer, 4 *Moore's Federal Practice,* para. 25.60[6] (2d ed.1984). Other circuits have rejected the theory of automatic waiver and have suggested instead a balancing test which weighs the needs of the defendant seeking discovery against those of the plaintiff asserting a privilege on a case-by-case basis. *Wehling v. Columbia Broadcasting Sys.,* 608 F.2d 1084, 1087–88 (5th Cir.1979); *Black Panther Party v. Smith,* 661 F.2d 1243, 1266–68 (D.C.Cir. 1981). *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* Section 2018, at 148 (1970 & Supp.1986).

tion vital to the defense.[11] Such "strategic" withholding of information at the pretrial stage has been termed "anticipatory waiver" in that the privilege is waived "[w]hen the party asserting the privilege bears the burden of proof on an issue and can meet that burden only by introducing evidence of a privileged nature". Note, *Privileged Communications*, 98 Harv.L. Rev. at 1632, 1639. The party bearing the burden of proof, usually the plaintiff, cannot "eat his cake and have it too", *Levine v. Bornstein*, 174 N.Y.S.2d at 578, "have it both ways," *Anderson v. Nixon*, 444 F.Supp. at 1199, or "stack the deck" against the defending party. *Collins v. Bair*, 256 Ind. 230, 237–38, 268 N.E.2d 95 (1971). Asserting a privilege under these circumstances unfairly prejudices the defendant's ability to prepare a defense and thwarts the chances of settlement. Note, *Privileged Communications*, 98 Harv.L. Rev. at 1635. Thus, the doctrine of implied or anticipatory waiver "operates as the circuit-breaker of privilege law", protecting against its abuse "[l]ike an automatic switch that protects electrical circuits from destructive high-voltage surges". *Id.* at 1629.

By strategically withholding information vital to the defense at the pretrial stage, the plaintiff who initiated this suit is attempting to have it both ways. This he cannot do. Having placed the confidentiality of his sources at issue, the plaintiff reporter is precluded from asserting any first amendment reporter's privilege which he might otherwise have had in this case. The defendant's motion to compel the plaintiff's deposition testimony is therefore granted.

**11.** This waiver analysis has been applied to the patient-physician privilege, *Koump v. Smith*, 25 N.Y.2d 287, 294, 303 N.Y.S.2d 858, 250 N.E.2d 857 (1969); *Collins v. Bair*, 256 Ind. 230, 237–38, 268 N.E.2d 95 (1971) (patient suing physician for malpractice, by initiating suit, puts his condition at issue and waives privilege); 8 *Wigmore on Evidence*, Section 2389 (McNaughton ed. 1961); to the attorney-client privilege, *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975) (client waives privilege by raising affirmative

If the plaintiff should fail to comply in accordance with this ruling, the court will entertain the alternative sanctions available under Rule 37, Fed.R.Civ.P.

defense of immunity); to the testimonial privilege, *Brown v. United States*, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (Frankfurter, J.) (a witness who testifies on his own behalf cannot refuse to answer questions on cross-examination), *reh'g denied*, 356 U.S. 948, 78 S.Ct. 776, 2 L.Ed.2d 822 (1958); and to an informer's privilege, *Westinghouse Elec. Corp. v. City of Burlington*, 351 F.2d 762, 771 (D.C.Cir.1965) (by bringing suit informer subjects himself to civil discovery).