AD Investment 2000 Fund LLC, Community Media, Inc., a Partner Other Than the Tax Matters Partner, Petitioner *v*. Commissioner of Internal Revenue, Respondent

AD Global 2000 Fund LLC, Warsaw Television Cable Corp., a Partner Other Than the Tax Matters Partner, Petitioner *v*. Commissioner of Internal Revenue, Respondent

Docket Nos. 9177–08, 9178–08.          Filed April 16, 2014.

In anticipation of Ps' affirmative defenses to accuracy-related penalties (e.g., reasonable cause and good faith), R

moves (1) to compel production of letters expressing attorneys' opinions as to whether it was more likely than not that anticipated tax benefits from transactions in question would be upheld and (2) to sanction Ps for noncompliance with any order directing production. Ps object on grounds that the letters are privileged attorney-client communications. R argues that Ps impliedly waived any privilege by putting into issue the LLCs' beliefs and state of mind. Ps deny that the LLCs relied on the letters. *Held*: By putting the LLCs' legal knowledge and understanding into contention in order to establish good-faith and state-of-mind defenses, Ps forfeit the LLCs' privilege protecting attorney-client communications relevant to the content and the formation of their legal knowledge, understanding, and beliefs; an order directing production will be issued. *Held*, *further*, if Ps fail to comply with the order directing production, the Court will consider the sanction of preventing Ps, in support of affirmative defenses, from introducing evidence of the LLCs' reasonable beliefs and state of mind.

*Elliot Silverman*, *Howard Kleinhendler*, and *Orrin Eliot Tilevitz*, for petitioners.

*Veronica L. Trevino*, *Kathryn F. Patterson*, *Jarrod R. Jenkins*, and *Elaine Harris*, for respondent.

### OPINION

HALPERN, *Judge*: In each of these consolidated cases, respondent has moved (motions) for us to compel petitioner to produce documents and to sanction petitioner if it fails to comply with any resulting order to produce the documents. Petitioners object (objection). We will grant the motions insofar as they ask us to compel production of documents, and we will set them for hearing insofar as they ask us to sanction petitioners for failure to comply with our order.

Except as otherwise stated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for 2000.

## *Background*

These consolidated cases are partnership-level actions involving what respondent describes as a Son-of-BOSS tax shelter.[1] On that basis, respondent has adjusted partnership

---

[1] A "Son-of-BOSS" tax shelter is a variant of the Bond and Options Sales

Continued

items of the two partnerships[2] and determined that section 6662 accuracy-related penalties should apply to any resulting underpayments of tax. In connection with his penalty determinations, respondent alleges that his adjustments of partnership items are attributable to a tax shelter. He also alleges that the underpayments of tax resulting from his adjustments of partnership items are attributable to (1) a substantial understatement of income tax, (2) a gross valuation misstatement, or (3) negligence or disregard of rules and regulations. The partnerships' tax years in question are both calendar year 2000. Petitioners have assigned error to respondent's adjustments and to his penalty determinations.

Respondent seeks to compel the production of six opinion letters (opinions) from the law firm of Brown & Wood LLP. Respondent represents, and petitioners do not contradict, that the opinions express Brown & Wood's opinion as to whether, on the basis of representations made to it, it was more likely than not that the anticipated tax benefits from the transactions in question would be upheld for Federal income tax purposes. Petitioners argue that they need not produce the opinions since each is a privileged communication between attorney and client that need not be disclosed. Respondent appears to accept that the opinions constitute attorney-client communications but argues that, under the common law doctrine of implied waiver, the attorney-client privilege is waived when the client places otherwise privileged matters in controversy. Respondent argues that petitioners placed the opinions into controversy by relying on affirmative defenses to the penalties that turn on the partnerships' beliefs or state of mind.

It is true that, in defense to respondent's determinations of an accuracy-related penalty based on a substantial understatement of income tax, *see* sec. 6662(b)(2), petitioners aver:

Strategy (BOSS) tax shelter. "The purpose of all Son-of-BOSS tax shelters is to create 'artificial tax losses designed to offset income from other transactions.'" *6611, Ltd. v. Commissioner*, T.C. Memo. 2013–49, at *11 (quoting *Napoliello v. Commissioner*, 655 F.3d 1060, 1062 (9th Cir. 2011), *aff'g* T.C. Memo. 2009–104).

[2] Apparently, the two LLCs, AD Investment 2000 Fund LLC (ADI) and AD Global 2000 Fund LLC (ADG), have elected to be taxed as partnerships. *See* sec. 301.7701–3(a), Proced. & Admin. Regs. Consistent with the parties' usage, we will refer to the entities as partnerships.

"There is or was substantial authority for the Partnership's and its partners' tax treatment of any items resulting in an underpayment of tax, and the Partnership and its partners reasonably believed that their tax treatment of such items was more likely than not the proper [tax] treatment". *See* sec. 6662(d)(2)(C).[3] In defense to respondent's determination of accuracy-related penalties generally, petitioners aver: "Any underpayment of tax was due to reasonable cause and with respect to which the Partnership and its partners acted in good faith." *See* sec. 6664(c)(1). Petitioners deny, however, that their averments bring professional advice (i.e., the opinions) into question.

With respect to petitioners' first defense, to respondent's determination of an accuracy-related penalty based on a substantial understatement of income tax, the key point appears to be whether each partnership (acting through its principals or its agents) reasonably believed (belief requirement) that its tax treatment of partnership items was more likely than not the proper tax treatment. The belief requirement is found in section 6662(d)(2)(C)(i)(II) and elaborated upon in section 1.6662–4(g)(4), Income Tax Regs. Section 1.6662–4(g)(1)(i)(B), Income Tax Regs., provides that the belief requirement is satisfied if "[t]he taxpayer reasonably believed at the time the return was filed that the tax treatment of that item was more likely than not the proper treatment." The regulations provide that a taxpayer may satisfy the belief requirement by either of two methods. They provide that the requirement is satisfied if either

> (A) [first method] The taxpayer analyzes the pertinent facts and authorities in the manner described in paragraph (d)(3)(ii) of this section, and in reliance upon that analysis, reasonably concludes in good faith that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld if challenged by the Internal Revenue Service; or
>
> (B) [second method] The taxpayer reasonably relies in good faith on the opinion of a professional tax advisor, if the opinion is based on the tax advisor's analysis of the pertinent facts and authorities in the manner described in paragraph (d)(3)(ii) of this section and unambiguously states that the tax advisor concludes that there is a greater than

---

[3] As acknowledged by the parties during a conference call with the Court to clarify the point, we are concerned here only with partnership-level defenses to the penalty. *Cf.* sec. 301.6221–1(c) and (d), Proced. & Admin. Regs. *But see* sec. 1.6662–4(g)(5), Income Tax Regs.

50-percent likelihood that the tax treatment of the item will be upheld if challenged by the Internal Revenue Service.
  [Sec. 1.6662–4(g)(4)(i), Income Tax Regs.]

Respondent concedes that petitioners' averments raise only the first method (self-determination), and not the second method (reliance on professional advice), to show that the partnerships satisfy the belief requirement. Nevertheless, respondent argues, petitioners have placed the opinions into controversy by relying on a reasonable cause, good-faith defense and by putting the partnerships' beliefs into issue. Respondent states: "Under the first method, * * * those tax opinions remain relevant to the subjective inquiries into reasonableness and good faith." He adds: "Putting reasonable belief in issue places the Partnership['s], and specifically James Haber's, state of mind at issue." He explains: "Mr. Haber ['de facto manager of the partnership vehicle[s]'] received the subject tax opinions before taking the questioned positions and presumably before making his alleged self-determination of authorities." The opinions are relevant, respondent argues, because, if they contradict Mr. Haber's claimed self-determination, they may show that his self-determination was not reasonable, and, if consistent with his self-determination, they may show that he made no self-determination. Respondent also argues:

> The subject tax opinions are also relevant to the good faith element of the penalty defense[s]. * * * The facts contained in the subject tax opinions necessarily reflect communications made by Mr. Haber on behalf of ADG [or ADI] and the ADG [or ADI] Partners for the purpose of securing tax advice. Evidence that Mr. Haber solicited advice on the basis of facts that were incomplete or altogether false, compared to the facts about the * * * [option partnership strategy] adduced at trial, would indicate that he knew that the tax benefits claimed were not proper. This would show bad faith.

Petitioners respond: "[T]he petitions do not assert any advice-of-counsel defense, nor do they mention (or even allude to) any advice from their attorneys. The Petitions do allege that * * * [the partnerships] and their partners reasonably believed the positions on the Partnerships' tax returns to be correct, but such a defense need not rely on professional advice." They argue: "A generalized 'good faith' defense, not specifically relying on the advice of counsel is *not* a waiver of the attorney-client privilege. [*Pritchard v.*

*Cnty. of Erie*] *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008); *In re Grand Jury*, 219 F.3d [175] at 183 [(2d. Cir. 2000)]; *United States v. White*, 887 F.2d 267, 270–71 (D.C. Cir. 1989)". In response to respondent's arguments that the opinions are relevant to factual questions presented by the partnerships' belief, reasonable cause, and good-faith defenses, petitioners respond: "[T]he mere fact that attorney-client communications would be 'relevant' is not a sufficient basis to waive the privilege. *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863–64 (3d Cir. 1994)."

Respondent relies principally on *Johnston v. Commissioner*, 119 T.C. 27, 37 (2002), in which the taxpayer "asserted reliance on qualified experts as an affirmative defense to respondent's fraud penalty allegations." Interpreting that reference to qualified experts to include legal counsel, *id.* at 37–38, we undertook the approach of determining whether there was an implied waiver as outlined in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975). We considered whether (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. *Johnston v. Commissioner*, 119 T.C. at 36. We held that all three elements of the *Hearn* test for implied waiver had been satisfied. *Id.* at 40. Respondent argues that he has established that the three elements of the *Hearn* test are satisfied in these cases. He adds that the *Hearn* test has been endorsed by the Court of Appeals for the D.C. Circuit. *See Sanderlin v. United States*, 794 F.2d 727 (D.C. Cir. 1986).

Petitioners respond that, although adopted by this Court in *Johnston*, the *Hearn* approach has been explicitly rejected by the U.S. Court of Appeals for the Second Circuit in *Pritchard v. Cnty. of Erie (In re Cnty. of Erie)*, 546 F.3d 222, 229 (2d Cir. 2008). Petitioners contend that, in *Pritchard*, the Court of Appeals held that to impliedly waive the attorney-client privilege, "a party must *rely* on privileged advice from his counsel to make his claim or defense." *Id.* The Court of Appeals for the Second Circuit is the presumptive venue for appeal of these cases. *See* sec. 7482(b)(1)(B). For that reason,

petitioners add that, under the rule of *Golsen v. Commissioner*, 54 T.C. 742 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971), *Pritchard* governs in these cases.

## *Discussion*

### I. *Golsen Doctrine*

Section 7453 provides in pertinent part that Tax Court proceedings are conducted in accordance with the rules of evidence applicable to trials without a jury in the U.S. District Court for the District of Columbia. The Federal Rules of Evidence apply to proceedings before the U.S. District Court for the District of Columbia. *See* Fed. R. Evid. 1101. The Federal Rules of Evidence incorporate the common law rules of privilege. *See* Fed. R. Evid. 501, 1101(c). Under the rule of *Golsen v. Commissioner*, 54 T.C. at 757, this Court will "follow a Court of Appeals decision which is squarely in point where appeal from our decision lies to that Court of Appeals". Because the facts in front of us are materially distinguishable from those of *Pritchard*, we need not consider whether under the *Golsen* rule we should follow the Court of Appeals for the Second Circuit's opinion in that case.

### II. *Claim of Privilege*

#### A. *Introduction*

"As construed under Federal common law, the attorney-client privilege exists 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Johnston v. Commissioner*, 119 T.C. at 34 (quoting *Upjohn v. United States*, 449 U.S. 383, 389 (1981)). Nevertheless:

> It is well established doctrine that in certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted. * * *
>
> In some circumstances, courts have ruled that it would be unfair for a party asserting contentions to an adjudicating authority to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions. * * *
>
> [*In re Grand Jury Proceedings John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003).]

*See also, e.g.*, *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived."). "Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *United States v. Doe (In re Grand Jury Proceedings)*, 219 F.3d 175, 183 (2d Cir. 2000).

When a person puts into issue his subjective intent in deciding how to comply with the law, he may forfeit the privilege afforded attorney-client communications. *See, e.g.*, *United States v. Exxon Corp.*, 94 F.R.D. 246, 248 (D.D.C. 1981) ("Most courts considering the matter have concluded that a party waives the protection of the attorney-client privilege when he voluntarily injects into the suit the question of his state of mind."). Professor Rice, in his treatise, Attorney-Client Privilege in the United States, makes a similar point: "The most common situation in which courts have found waiver is where the client claims that he acted on the 'good faith' belief that his conduct was reasonable and legal." Paul R. Rice, 2 Attorney-Client Privilege in the United States, sec. 9:53, at 434 (2013–2014 ed. 2013). *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991), involved an appeal from convictions for financial crimes. The trial court had ruled that, if the defendant testified regarding his good-faith efforts to comply with the securities laws, he would open the door to cross-examination with respect to the basis for his belief regarding the lawfulness of his actions and that such cross-examination would allow inquiry into communications that he had with his attorney ("discussions ordinarily protected by the attorney-client privilege"). *Id.* at 1291. The defendant did not testify. On appeal, he contended that his testimony would not have disclosed the content or even the existence of any privileged communications or asserted a reliance on counsel. *Id.* For that reason, he argued, the attorney-client privilege would not be waived by his testimony and, therefore, the trial court committed reversible error in denying his motion in limine seeking to protect the privilege. *Id.* at 1292. The Court of Appeals disagreed that his testimony would not waive the privilege, holding that, even if his testimony did not advert to protected communications, he would implicitly waive the privilege if he asserted a claim

"that in fairness requires examination of protected communications." *Id.* The Court of Appeals then found:

> This waiver principle is applicable here for Bilzerian's testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue. His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent. [*Id.*]

The court concluded: "The trial court's ruling left defendant free to testify without getting into his state of mind, but correctly held that if he asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal." *Id.* at 1294. In *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994), relying on *Bilzerian*, the Court of Appeals for the Eleventh Circuit stated: "USX could have denied criminal intent without affirmatively asserting that it believed that its change in pension fund policy was legal. Having gone beyond mere denial, affirmatively to assert good faith, USX injected the issue of its knowledge of the law into the case and thereby waived the attorney-client privilege." More recently, in *Pritchard*, 546 F.3d at 228–229, although finding no implied waiver of the attorney-client privilege and noting that the petitioners therein did not claim a good-faith or state-of-mind defense, the Court of Appeals for the Second Circuit generalized: "[T]he assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege." In *Anderson v. Nixon*, 444 F. Supp. 1195, 1200 (D.D.C. 1978), Judge Gesell put the rule thus: "[A] client waives his attorney privilege when he brings suit or raises an affirmative defense that makes his intent and knowledge of the law relevant."

### B. *Belief Requirement*

To satisfy the belief requirement by the first method (i.e., under section 1.6662–4(g)(4)(i)(A), Income Tax Regs.) petitioners must show that the partnerships "analyze[d] the pertinent facts and [legal] authorities * * * and in reliance upon that analysis, reasonably * * * conclude[d] in good faith that there * * * [was] a greater than 50-percent likeli-

hood that the tax treatment of the item * * * [would] be upheld if challenged by the Internal Revenue Service". Petitioners' averments that the partnerships satisfied the belief requirement by the first method put into dispute the partnerships' knowledge of the pertinent legal authorities. Petitioners' averments also put into contention the partnerships' understanding of those legal authorities and their application of the legal authorities (i.e., the law) to the facts. Finally, the averments put into contention the basis for the partnerships' belief that, if challenged, their tax positions would more likely than not succeed in the courts. Petitioners have thus placed the partnerships' legal knowledge, understanding, and beliefs into contention, and those are topics upon which the opinions may bear. If petitioners are to rely on the legal knowledge and understanding of someone acting for the partnerships to establish that the partnerships reasonably and in good faith believed that their claimed tax treatment of the items in question was more likely than not the proper treatment, it is only fair that respondent be allowed to inquire into the bases of that person's knowledge, understanding, and beliefs including the opinions (if considered). *See, e.g.*, *Cox*, 17 F.3d 1386; *Bilzerian*, 926 F.2d 1285; *Anderson*, 444 F. Supp. 1195.

Apparently, each partnership received the opinions well before its 2000 tax returns were due. Petitioners do not claim that those acting for the partnerships ignored the opinions. They claim only that the regulations provide an alternative pursuant to which the partnerships may satisfy the belief requirement by self-determination (without relying on professional advice). That is true. *See* sec. 1.6662–4(g)(4)(i), Income Tax Regs. It is, however, beside the point. The point is that, by placing the partnerships' legal knowledge and understanding into issue in an attempt to establish the partnerships' reasonable legal beliefs in good faith arrived at (a good-faith and state-of-mind defense), petitioners forfeit the partnerships' privilege protecting attorney-client communications relevant to the content and the formation of their legal knowledge, understanding, and beliefs. *E.g.*, *Cox*, 17 F.3d 1386; *Bilzerian*, 926 F.2d 1285. *Pritchard*, 546 F.3d 222, is not to the contrary. The Court of Appeals there stated: "Petitioners do not claim a good faith or state of mind defense. They maintain only that their actions were lawful or that

any rights violated were not clearly established. In view of the litigation circumstances, any legal advice rendered by the County Attorney's office is irrelevant to any defense so far raised by Petitioners." *Id.* at 229.

### C. *Reasonable Cause Exception*

Section 6664(c)(1) provides that the accuracy-related penalty shall not be imposed with respect to any portion of an underpayment if the taxpayer shows there was reasonable cause for, and that he acted in good faith with respect to, that portion. Section 1.6664–4(b)(1), Income Tax Regs., provides:

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. * * * Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of * * * law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer. * * *

As stated, petitioners aver: "Any underpayment of tax was due to reasonable cause and with respect to which the Partnership and its partners acted in good faith." Petitioners do not in the objection contest respondent's claim in the motions that the opinions "are * * * relevant to the good faith element of the penalty defense." For the reasons set forth with respect to the belief requirement, petitioners have with respect to the section 6664(c)(1) reasonable cause exception forfeited the privilege that would otherwise apply to the opinions.

### D. *Conclusion*

Petitioners' averments in support of their affirmative defenses to respondent's determination of accuracy-related penalties put into contention the state of mind of those who acted for the partnerships and the partnerships' good-faith efforts to comply with the tax law. If petitioners persist in those defenses, it would be unfair to deprive respondent of knowledge of the contents of the opinions and the opportunity to put those opinions into evidence. If petitioners persist, they sacrifice the privilege to withhold the contents of the opinions.

III. *Conclusion*

As stated, we will grant the motions insofar as they ask us to compel production of documents. We will set the motions for hearing insofar as they ask us to sanction petitioners for failure to comply with our order granting the motions, with an eye, if there is noncompliance, toward prohibiting petitioners from introducing evidence that the partnerships met the belief requirement by self-determination or that someone acting for the partnerships had a good-faith and honest misunderstanding of law.

*An appropriate order will be issued.*